Eva L. GAUGLER, on behalf of herself and as Executrix Under the Last Will and Testament of Raymond C. Gaugler, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 119, Docket 27677.

United States Court of Appeals Second Circuit.

Argued Jan. 14, 1963.

Decided Jan. 24, 1963.

---

Vincent R. Fitzpatrick, New York City (Wesley N. Fach, New York City, on the brief), for plaintiff-appellant.

Morton L. Ginsberg, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, and Robert Arum, Asst. U. S. Atty., New York City, on the brief), for defendant-appellee.

Before MEDINA, WATERMAN and MOORE, Circuit Judges.

MEDINA, Circuit Judge.

Plaintiff appeals from an adverse judgment after a non-jury trial in the Southern District of New York, in an action brought under 28 U.S.C., Section 1346(a) (1) to recover income taxes paid under protest for the year 1952 in the amount of $61,482.58. We hold that Judge Levet properly determined that $72,727.27 paid by the American Cyanamid Company to appellant as the widow of Raymond C. Gaugler, who was, at the time of his death, President of the Company, was not excludable from gross income as a gift under Section 22(b) (3) of the Internal Revenue Code of 1939. Findings of fact, conclusions of law and opinion are reported at 204 F.Supp. 493.

Raymond C. Gaugler died suddenly on January 11, 1952 at the age of 60 after 30 years of service with the American Cyanamid Company, having become President in 1951. On January 16, 1952 the Executive Committee of the Board of Directors passed a Resolution

providing that "voluntary payments" be made to Mrs. Gaugler, the widow, "at the times and equal to the salary which would have been payable to Mr. Gaugler" had he survived and continued employed during the period from January 11, 1952 to December 31, 1952. The minutes of the meeting recite that Mr. Towe, a Committee member, stated that "it had been the practice in the event of the death of valued employees and officers with long service with the Company to pay, for varying lengths of time, their widows amounts equal to their salaries." Although no written plan existed, payments of $36,000, the exact amount of the salary of the decedents, had previously been made to the widows of Messrs. Landis and O'Daniel, who had died while serving as Vice Presidents in 1944 and 1943 respectively; and payments of $64,837 had been made to the widow of Mr. Bell, who died while serving as President in 1950, this amount equalling his 1951 salary of $63,000 with a pro rata adjustment for part of 1950. Payments of $8,044 were also made to the widow of Mr. Murray, who died while serving as Assistant Treasurer in 1958 at a salary of $13,500, and payments to lesser officials and other employees were also made in varying amounts.

Semi-monthly installments were subsequently paid to Mrs. Gaugler in her individual capacity at the times and equal in amount to the salary her husband would have received had he survived and continued employed through the balance of 1952. These payments were recorded as "Executive's Salaries" on the Company's books, and a federal income tax deduction was taken therefor. Decedent had no legally enforceable right to any compensation other than the salary and bonus he had received in his lifetime, and Mrs. Gaugler had rendered no services to the Company.

Mr. Martin, another Committee member, testified that he was a good friend of the Gauglers; that he had been shocked by decedent's sudden death and discussed with other Committee members the fact that decedent had increased his standard of living shortly before his death upon his assumption of the office of President, and that Mrs. Gaugler "would probably have a hard time adjusting to her new life"; that although "no obligation" was felt, it was deemed advisable that a contribution be made to her to get her over the period of adjustment, and that a "reasonable amount" as a "rule of thumb" would be an amount equal to decedent's fixed salary for the balance of 1952.

Mr. Martin also testified that past policy in the case of Mr. Bell had been discussed. Mr. Bell had remarried shortly before his death and his new wife, who had been a trained nurse, was suddenly elevated to a high standard of living; and it was thought that she "would need some time for readjustment to her living standard." Mr. Martin also stated that he knew other officer and employee payments had been made, but that each case was "considered on its own situation," and there was no previous understanding among the Committee members that such payments would be made.

In addition and "ancillary to" the "humanitarian matter of giving her some money for a period of adjustment," Mr. Martin testified, the Committee discussed the fact that it would be "good public relations in a negative way" to make the payments, since the reputation of the Company would be hurt if it became known that no payments were made when the widow was "strapped and in difficulties." The "most direct" harm, it was stated, would occur "if it spreads around among the employees that the company doesn't consider in a humanitarian manner widows of employees and officers"; the "most remote" harm would be "to the employment of future executives." However, no actual investigation of Mrs. Gaugler's financial circumstances or needs was ever undertaken. Finally, Mr. Martin testified that it was probably discussed and he felt that the payments were deductible by the Company but not taxable to the widow; but that he knew nothing about the accounting or tax treatment of the payments since direc-

tions for payment had been given to the Treasurer or Vice President in charge of finances.

Mr. Towe testified by deposition that Mr. Martin had "fairly stated the actuating considerations" in making the payments; that he specifically remembered the discussion of the previous case of Mr. Bell; that "most emphatically" failure to make the payments would have been "most adverse" to the Company had such become general knowledge, and that it was a "decided benefit" and the payments constituted a "very economical expenditure" in insuring that the Company retain "its excellent reputation as treating its employees fairly" both in regard to the "investing public" on Wall Street and as affecting the Company's "ability to attract and retain people." Mr. Towe stated, however, that "the principal thing" in his mind was the "humanitarian consideration" in helping Mrs. Gaugler adjust to her changed situation and considering also the great expenses of the Gauglers in assisting the families of four of their children.

■ Clearly the payments here constituted gross income within Section 22 (a) of the 1939 Code, and plaintiff bears the burden of proving that they fall within the gift exclusion of Section 22 (b) (3) and that the Commissioner's determination of deficiency is incorrect. Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 48–49, 69 S.Ct. 358, 93 L.Ed. 477; Simpson v. United States, 7 Cir., 1958, 261 F.2d 497, 500, cert. denied, 1959, 359 U.S. 944, 79 S.Ct. 724, 3 L.Ed.2d 677; Stanton v. United States, 2 Cir., 1959, 268 F.2d 727, 729, reversed on other grounds, 1960, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218. In Commissioner of Internal Revenue v. Duberstein, 1960, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (joint appeal with Stanton v. United States, supra), the Supreme Court set the guides to be considered in determining whether a payment is a gift, and explained also the scope of review of an appellate court in reviewing such a determination. It is quite clear from Judge Levet's opinion that he understood and applied these guides, and under the narrow scope of review which this Court exercises in these cases we cannot find any basis for reversal.

In reaching his decision Judge Levet considered a number of clearly relevant factors: (1) the inconsistent accounting and tax treatment by the Company;[1] (2) the existence of a previous practice of making similar payments to widows of high officials of the Company;[2] (3) the computation of the payments in terms of the salary which would have been paid had decedent survived and continued his employment;[3] (4) the fact that the payments were made by a business corporation and that sound business reasons were considered in making them;[4] (5) the "moral duty" implicit in the special circumstances of the widow's need to readjust to a lower standard of living;[5] (6) the Company's failure to investigate the actual financial circumstances and needs of the widow.[6]

Appellant, however, argues: that the inconsistent accounting and tax treat-

1. Commissioner of Internal Revenue v. Duberstein, supra, 363 U.S. at 287, 80 S.Ct. at 1197; Bausch's Estate v. Commissioner, 2 Cir., 1951, 186 F.2d 313, 314; Simpson v. United States, supra, 261 F.2d at 501.

2. Bausch's Estate v. Commissioner, supra, 186 F.2d at 314; Bounds v. United States, 4 Cir., 1958, 262 F.2d 876, 881; Simpson v. United States, supra, 261 F. 2d at 500–501.

3. Bausch's Estate v. Commissioner, supra, 186 F.2d at 314; Poorman v. Commissioner, 9 Cir., 1942, 131 F.2d 946, 949.

4. Commissioner of Internal Revenue v. Duberstein, supra, 363 U.S. at 287, 80 S.Ct. at 1197; Simpson v. United States, supra, 261 F.2d at 500–501.

5. Commissioner of Internal Revenue v. Duberstein, supra, 363 U.S. at 285, 80 S.Ct. at 1196.

6. Simpson v. United States, supra, 261 F. 2d at 501; Fisher v. United States, D. Mass., 1955, 129 F.Supp. 759, 761.

ment was not specifically authorized, but only "ministerial" in nature; that the use of decedent's salary as a measure was a "mere rule of thumb" without significance; that the previous payments on this record are far from establishing a "plan" or "practice"; that it was specifically stated "no obligation" was felt in making the payments; and that there is no rule that corporate gifts can only be made to the impecunious and needy. In addition, affirmatively, appellant notes: (1) that the payments did not constitute compensation to which decedent or appellant was legally entitled; (2) that the Resolution recited that the payments were "voluntary"; (3) that the Committee members thought the payments would be nontaxable to the widow; (4) that the payments were made to the widow directly rather than to the estate of decedent; (5) that the "humanitarian aspects" were considered and one member stated this was the "principal thing."

█ We might address ourselves specifically to many of these points. For example, as to the contention respecting lack of authority of the subordinate officials responsible for the accounting and tax treatment, we may note that "the burden of proving their lack of authority, if such was the fact, was upon the taxpayer." Fisher v. Commissioner, 2 Cir., 1932, 59 F.2d 192, 193. So too, the donor's characterizations, while relevant, are not controlling or determinative. Commissioner of Internal Revenue v. Duberstein, supra, 363 U.S. at 286, 80 S.Ct. at 1197. However, for the reasons set forth below, we find this exercise to be entirely unnecessary.

Doubtless there is room for a reasonable difference of opinion. But that is no more than to say that, had the case been tried to a judge and jury, the question was one of fact for the jury to decide, as reasonable men might differ both as to the weight to be given to the various factors, depending perhaps on the credibility of one or more witnesses, and as to the inferences to be drawn from the facts as the jury found them to be. That Judge Levet decided the factual questions thus presented would seem to dispose of the matter, unless he committed some error of law in the manner in which he approached or carried out the task of fact finding. Consequently, what is decisive to us, is the circumstance that he approached the task of fact finding and carried it to a conclusion in precisely the manner described as proper in Commissioner of Internal Revenue v. Duberstein, supra, 363 U.S. at 285–289, 80 S.Ct. at 1196–1198.

█ In reaching the conclusion that the impetus for the payments was "anticipated economic benefits as well as the impelling force of a moral duty," Judge Levet considered all the relevant factors, recognizing that each one is "merely a part of the overall factual determination." As the significance and evaluation of these factors depend "on the application of the fact-finding tribunal's experience with the main springs of human conduct," we must give "primary weight" to the conclusions thus arrived at. Our power of review is "quite restricted" and we can only reverse if the findings are clearly erroneous. Commissioner of Internal Revenue v. Duberstein, supra, 363 U.S. at 289–291, 80 S.Ct. 1198–1199; United States v. Stanton, 2 Cir., 1961, 287 F.2d 876, affirming, S.D. N.Y., 1960, 186 F.Supp. 393, on remand from Commissioner of Internal Revenue v. Duberstein, supra; Smith v. Commissioner, 3 Cir., 1962, 305 F.2d 778, cert. denied, 371 U.S. 904, 83 S.Ct. 208, 9 L.Ed.2d 165; Martin v. Commissioner, 3 Cir., 1962, 305 F.2d 290, cert. denied, 371 U.S. 904, 83 S.Ct. 209, 9 L.Ed.2d 165.

Appellant cites a number of cases where payments to a widow under analogous circumstances were held to constitute a gift. In some of these, however, the findings below were affirmed.[7]

7. United States v. Kasynski, 10 Cir., 1960, 284 F.2d 143; United States v. Frankel, 8 Cir., 1962, 302 F.2d 666, cert. denied, 371 U.S. 903, 83 S.Ct. 208, 9 L.Ed.2d 165.

**686**

Perhaps the others may be distinguished.[8] We do not think it would be profitable to discuss these other cases at length. We are content to follow and repeat what our brothers of the Third Circuit have said: "We cannot exceed the narrow function assigned to us, regardless of what others have done." Smith v. Commissioner, supra, 305 F.2d at 782.

Affirmed.

8. Kuntz' Estate v. Commissioner, 6 Cir., 1962, 300 F.2d 849, cert. denied, 371 U.S. 903, 83 S.Ct. 208, 9 L.Ed.2d 165;

Olsen's Estate v. Commissioner, 8 Cir., 1962, 302 F.2d 671, cert. denied, 371 U.S. 903, 83 S.Ct. 208, 9 L.Ed.2d 165.