Estate of William Enyart, Deceased, Kate P. Enyart Gordon, Executrix, and Kate P. Enyart Gordon, formerly Kate P. Enyart v. Commissioner.
Estate of Enyart v. Commissioner
Docket No. 4461-63.
United States Tax Court
T.C. Memo 1965-266; 1965 Tax Ct. Memo LEXIS 62; 24 T.C.M. (CCH) 1447; T.C.M. (RIA) 65266; October 5, 1965
Thomas J. Beddow and Meade C. Patrick, 1126 Woodward Bldg., Washington, D.C., for the petitioners. George T. Rita, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency has been determined by the Commissioner in the income tax of petitioners for the taxable year 1958 in the amount of $2,365.25. Petitioners claim an overpayment in income tax for that year in an amount which is attributable to the inclusion in income of $5,000 of moneys paid petitioner Kate P. Enyart Gordon subsequent to the death of *63 her then husband William Enyart. The issues to be decided are (1) whether the respondent has erred in failing to exclude from petitioners' income as a gift a lump-sum payment made by William Enyart's employer to his wife subsequent to his death and (2) whether petitioners are entitled to a refund by reason of their inclusion of the sum of $5,000 received by petitioner Kate Enyart Gordon from her deceased husband's employer in five monthly $1,000 payments during 1958. Findings of Fact The facts which have been agreed upon by the parties are found as stipulated. Kate P. Enyart Gordon individually and as executrix of the estate of William R. Enyart, deceased, filed a joint income tax return for the calendar year 1958 with the district director of internal revenue in Hartford, Connecticut, on which she reported income in the amount of $38,221.35 and paid the tax thereon. The respondent readjusted petitioner's income for the year 1958 and, on June 27, 1963, mailed to petitioner a notice of deficiency for 1958 in the sum of $2,365.25. The adjustment referred to above treated all payments made by Simmonds Aerocessories, Inc., sometimes hereinafter referred to as Aero, to Kate *64 Enyart during 1958 as of the same nature, but excluded therefrom an amount of $5,000. (On brief respondent states this exclusion to be in pursuance of section 101(b)(1)(A) of the Internal Revenue Code of 1954.) The payments by Aero were made to Kate Enyart following the death of William Enyart which occurred on June 27, 1958. On June 30, 1958, the board of directors of Aero called a special meeting and passed the following resolution: RESOLVED that the Corporation immediately pay $10,000 to Mrs. William R. Enyart by reason of the death of Mr. Enyart. Subsequently, the board of directors again met on August 5, 1958, and passed the following resolution: RESOLVED, that termination compensation of W. R. Enyart, deceased President, in the total amount of $15,000 be set aside and paid to Mrs. Kate Perrin Enyart at the rate of $1,000 per month, beginning August 15, 1958 and continuing on the 15th day of each month thereafter until fully paid, and the Treasurer of the Company is authorized and directed to make such payments to Mrs. Enyart. On the joint income tax return filed by Kate P. Enyart, there was reported as received from Aero, on line 5 of the return, *65 the sum of $27,224.10. On its corporate income tax return for the year 1958, Aero deducted as salaries paid to William Enyart, deceased, the sum of $37,224.10, which included the $10,000 voted by resolution of June 30, 1958. However, in its W-2 form issued in connection with William Enyart's salary his salary was indicated at $27,224.10. On page 3, Schedule H, of her 1958 joint income tax return, petitioner reported: Payment of termination com-
pensation made by Simmonds
Aerocesories, Inc. to surviv-
ing spouse
$5,000.00
Aero on its books and records expensed the amounts paid to Kate Enyart, that is, the amount voted by resolution of June 30, 1958, and the amount voted per resolution of August 5, 1958. No differentiation was made by Aero on its books between the amounts voted to the widow of William R. Enyart by resolution of June 30, 1958, and that voted by resolution of August 5, 1958. Kate Enyart, by virtue of the death of William Enyart, was possessed of assets in the sum of approximately a half million dollars. Prior to his death, William R. Enyart entered into a contract of employment on January 1, 1947, with Simmonds Aerocessories, Inc., in which *66 it was agreed, among other things - As compensation for his services hereunder Simmonds shall pay to Enyart such salary as may be agreed upon from time to time by Simmonds and Enyart, it being understood, however, that in no event shall such yearly salary rate be less than such amount as may be necessary to assure to Enyart a sum in the amount of Eighteen Thousand Dollars ($18,000), after deducting Federal and State income taxes applicable solely to such compensation but after giving effect to Enyart's personal exemption, if any, granted under such income tax laws. During that portion of 1958 prior to Enyart's death he was paid a salary by Aero at the annual rate of $54,448.20. William R. Enyart was killed in an airplane accident on June 27, 1958. At the time of his death, he was the president of Aero, in which position he had served pursuant to a contract of employment dated January 1, 1947, and for at least 15 years. He was also a director of Aero at the time of his death. When he was killed, Enyart was serving as an official timer of a U.S. Air Force record speed flight from Westover Air Force Base in Massachusetts to England and return. Four KC-135 jet aircraft participated *67 in the record flight. Enyart was on the third plane taking off. Thirteen people were aboard this plane. The plane crashed on takeoff and all aboard were killed and burned beyond any physical recognition. At the time of his death, Enyart was 57 years of age. He was survived by his wife, the petitioner, Kate P. Enyart Gordon, who was then about 50 years of age, and two daughters, one 18, who had just finished her first year of college, and one 22, who had just been graduated from Wellesley. The remaining four members of the board of directors of Aero attended Enyart's funeral at Greenwich, Connecticut, on the afternoon of June 30, 1958. At the funeral, the chairman of the board requested these remaining members of the board to convene later that day in a special meeting of the board at the University Club in New York. The directors thereafter convened in a special meeting of the board at the University Club in New York City on June 30, 1958, at 6 p.m. The board meeting was held in an atmosphere of complete sadness, gloom, and grief. Every member of the board spoke feelingly and with concern about the great loss which Enyart's widow and children had suffered by reason of his sudden *68 death. In conection with these expressions of concern, the board decided that an immediate lump-sum payment of $10,000 should be made by Aero to Kate Enyart, and said payment was thereupon made to her. At the June 30, 1958, board meeting, it was made clear that the lump-sum payment of $10,000 was being made because of the horrible circumstances that had eventuated. It was specifically directed by the chairman at the June 30, 1958, board meeting that the question of the amount of Enyart's termination compensation, as well as the method of paying such termination compensation to Kate Enyart, would be taken up for consideration at the next meeting of the board in August. Aero was under no contractual obligation to make the aforesaid $10,000 lump-sum payment to Kate Enyart, and she performed no services for the corporation. On August 5, 1958, the board of directors adopted the resolution above set out in full. While there was no defined company policy to do so, when an executive left the employ of Aero, an amount of continuation compensation was normally paid to him. It might be 2 weeks', 1 month's, 2 months', or 3 months' pay. [Ultimate Findings] The $10,000 lump-sum payment *69 to Kate Enyart by Aero was a gift. The five monthly $1,000 payments to Kate Enyart in pursuant of the resolution of the Aero board of directors of August 5, 1958, were not gifts, but represented compensation paid to her with respect to services theretofore rendered by her husband and were paid by Aero by reason of his death. Opinion Whether the $10,000 payment by Aero to Kate Enyart in pursuance of its June 30, 1958, resolution and the five monthly $1,000 payments made to her in pursuance of its August 5, 1958, resolution constituted, in aggregate, sums paid as "employees' death benefits" under section 101(b)(1)[1] as contended by respondent or, on the other hand, as contended by petitioners were separate and distinct payments, the latter of which only was paid as death benefits under that section and the former of which was a gift under section 102(a), [2] are questions of fact dependent entirely upon Aero's intent in making such payments. Commissioner v. Duberstein, 363 U.S. 278; Gaugler v. United States, 312 F. 2d 681; Alex Silverman, 28 T.C. 1061, affd. 253 F. 2d 849. We have found as ultimate fact that petitioners' position *70 is the correct one. In Commissioner v. Duberstein, supra, the Supreme Court used the following language in discussing the character of payment which constitutes a gift under section 22(b)(3) of the 1939 Code and the corresponding section 102(a) of the 1954 Code; quoting from Commissioner v. LoBue, 351 U.S. 243, 246, it said: A gift in the statutory sense * * * proceeds from a "detached and disinterested generosity," * * *; "out of affection, respect, admiration, charity or like impulses." [Emphasis supplied.] We think the words "detached and disinterested" must have reference to any possibility or probability of an economic benefit to the donor by reason of a payment made without consideration, for, should this meaning be literal, an anomaly results because to be influenced by "generosity" seems to us to imply the opposite of detachment and disinterest. It seems clear too that with respect to the lump-sum $10,000 payment to Kate Enyart, Aero was motivated by "impulses" which were "like" charity, respect, admiration, and affection. The record is clear that she had never performed services for the donor and that it was under no obligation to make such *71 payment to her. We are unable to see how this payment was attached to or was of any interest to Aero from the standpoint of the betterment of its economic well-being. Ample evidence exists showing that Aero was motivated by an impulse of generosity stemming from the sudden and horrible death of William Enyart, the (expressed) feeling of pity for the surviving wife and children, and concern regarding their immediate welfare. As we see it these factors governed the actions of Aero in making the early lump-sum payment and fall clearly within the language used by the Supreme Court above quoted. Other evidence strengthens our conclusion that the $10,000 payment was a gift under *72 section 102(a). At the meeting of the board of directors at which the authorizing resolution was adopted the specific question was raised whether such payment was to be considered as employment termination pay. The question was answered by the chairman's statement that the question of termination pay would be considered at the board's next meeting. On this record it is not possible to conclude that the $10,000 lump-sum payment was other than "property acquired by gift" and therefore entirely excludable from gross income under section 102(a). The circumstances under which the $5,000 in five $1,000 monthly payments was paid to Kate Enyart are clearly different from those under which the lump-sum payment was made, and they indicate, as we have found, that Aero's intention in making such payments was likewise different. The fact that payment of these amounts was considered by the board of directors at a later meeting is itself significant of an altered approach. The motivation for the payment was clearly that of compensation for services rendered theretofore by the deceased husband whereas the motivation for the lump-sum payment was impulse and not shown by the evidence to have borne *73 any relationship to services by the husband. The installments were to aggregate $15,000 and then to cease, and they were determined and paid in pursuance of a company tradition, if not fixed policy, of providing termination pay of varied amounts in cases where executives' services were terminated. We conclude that both parties were correct in treating the $5,000 of termination pay as employee's death benefits under section 101(b). It follows of course that petitioners may exclude from gross income the $10,000 lump-sum payment in its entirety as a gift under section 102(a) and an aggregate of the installment payments to the amount of $5,000 under section 101(b). Because it will be necessary to compute what portion of the income tax paid by petitioners is attributable to the inclusion of the termination pay installments in their return and that portion refunded to them. Decision will be entered under Rule 50. Footnotes
1. SEC. 101. CERTAIN DEATH BENEFITS. * * *
(b) Employees' Death Benefits. - (1) General Rule. - Gross income does not include amounts received (whether in a single sum or otherwise) by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee. ↩
2. SEC. 102. GIFTS AND INHERITANCES. (a) General Rule. - Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.↩