JOHN C. NORDT COMPANY, INC., ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 578–64, 5951–64, 1153–65, 1154–65. Filed June 24, 1966.

---

[1] Proceedings of the following petitioners are consolidated herewith : John C. Nordt Co., Inc., docket No. 5951–64 ; Bertha C. Nordt, docket No. 1153–65 ; and Frieda C. Nordt, docket No. 1154–65.

*Martin D. Cohen*, for the petitioners.

*Alan M. Stark*, for the respondent.

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax in amounts as follows:

| Docket No. | Petitioner | Calendar year | Deficiency |
|---|---|---|---|
| 578-64 | John C. Nordt Co., Inc. | 1959 | $538.79 |
| 578-64 | John C. Nordt Co., Inc. | 1960 | 2,084.23 |
| 5951-64 | John C. Nordt Co., Inc. | 1961 | 1,500.00 |
| 1153-65 | Bertha C. Nordt | 1961 | 150.76 |
| 1154-65 | Frieda C. Nordt | 1961 | 228.18 |

In docket No. 1153–65, Bertha claims an overpayment for 1961 instead of a deficiency.

Three issues are involved:

1. Did the respondent err in disallowing $1,846.32 of the $3,046.32 compensation paid by John C. Nordt Co., Inc., to Bertha C. Nordt during the calendar year 1959?

2. Did the respondent err in disallowing as ordinary and necessary business expenses an amount of $7,000 paid in 1960, and an amount of $5,000 paid in 1961, by John C. Nordt Co., Inc., to three surviving maiden sisters (Bertha, Frieda, and Martha) of a deceased officer (brother Carl) of the corporation, which amounts were deducted by the corporation in its returns for 1960 and 1961, respectively, as "Pension-Deceased Officer's Ben."?

3. Did the respondent err in including in Bertha's and Frieda's income, respectively, for the year 1961 as "Dividend Income" one-third of the $5,000 paid to them by the John C. Nordt Co., Inc., during the year 1961?

Both Bertha and Frieda alleged in their respective petitions the following:

The amount of $1,666.66 [one-third of $5,000] paid to petitioner by John C. Nordt Company, Inc. during 1961 is excludible from petitioner's income under the provisions of Section 101(b) of the Internal Revenue Code of 1954, or, in the alternative, is excludible from petitioner's income under the provisions of Section 102(a) of the Internal Revenue Code of 1954.

At the beginning of the hearing, counsel for petitioners stated:

The individual petitioners, Martha and Bertha and Frieda, do not contend that the payments to them are exempt from income as gifts. They are simply contending that they are entitled to the $5,000 exclusion from income which is provided by the Code in the case of payments made on account of the death of a deceased employee. They were not given the benefit of that $5,000 exclusion, and we contend they are entitled to it. [Note: Martha is not a petitioner.]

### FINDINGS OF FACT

The stipulated facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner John C. Nordt Co., Inc., hereinafter referred to as petitioner, was incorporated under the laws of the State of New Jersey in 1948. For many years prior thereto petitioner's business, consisting of manufacturing seamless wedding ring blanks out of gold, had been carried on since 1872 by a succession of partnerships, comprised primarily of members of the Nordt family. Petitioner filed corporate income tax returns for the calendar years 1959, 1960, and 1961 with the district director of internal revenue at Newark, N.J.

Petitioners Bertha C. Nordt, hereinafter referred to as Bertha, and Frieda C. Nordt, hereinafter referred to as Frieda, are both unmarried individuals residing at 53 Warrington Place, East Orange, N.J. Bertha and Frieda each filed an individual income tax return for the taxable year 1961 with the district director of internal revenue at Newark, N.J.

For many years prior to 1954 petitioner's business was conducted from rented lofts at various locations in Newark, N.J. Sometime in 1954 petitioner acquired its own building in Cedar Grove, N.J., and at all times since has conducted its business at the last-mentioned location.

At the time petitioner was incorporated in 1948 its officers were as follows:

President_____ Paul W. Nordt, Sr.
Treasurer_____ Carl Nordt
Secretary_____ Bertha C. Nordt

Paul W. Nordt, Sr., hereinafter referred to as Paul, Sr., and Carl Nordt, hereinafter referred to as Carl, were brothers. Paul, Sr., and Carl had four sisters, namely, Frieda, Bertha, Martha, and Lydia. Paul, Sr., Carl, and Lydia are now deceased, having died on June 15, 1962, November 9, 1959, and September 3, 1959, respectively.

Paul W. Nordt, Jr., hereinafter referred to as Paul, Jr., is the son of Paul, Sr. He succeeded to the presidency of petitioner following his father's death and has continued to serve in that capacity at all times since.

As of January 1, 1959, the outstanding stock of the petitioner was held as follows:

| Stockholders | Number of shares |
|---|---|
| Carl | 784 |
| Paul, Sr | 725 |
| Paul, Jr | 210 |
| Bertha | 46 |
| Martha | 46 |
| Lydia | 46 |
| Frieda | 45 |
| Total | 1,902 |

Upon Lydia's death on September 3, 1959, her stock was bequeathed to her surviving sisters. Frieda received 16 shares; Bertha and Martha, 15 shares each. Upon Carl's death on November 9, 1959, his stock was bequeathed to a testamentary trust, the beneficiaries of which were Frieda, Bertha, and Martha. The trustees of such testamentary trust were William Nordt (nephew of the three surviving sisters), Bertha, and Frieda. During the taxable years 1959, 1960, and 1961, there were no transfers of petitioner's stock other than the above-mentioned transfers.

At all times until his retirement in 1958, Carl had full responsibility for all of petitioner's operations other than direct manufacturing. Thus, he was in charge of sales, bookkeeping, customer relations, and all matters of styling detail.

Between 1948 and 1961 petitioner's sales rose progressively from $382,064.59 to $785,102.88; gross profit thereon increased gradually from $14,304.87 in 1948 to $65,840.05 in 1961. These increases in sales and gross profit were largely attributable to Carl's sales effort.

The annual salary received by Carl from petitioner for the years 1948 through 1958 was as follows:

| | |
|---|---|
| 1948 | $12,000 |
| 1949 | 9,600 |
| 1950 | 7,200 |
| 1951–53 | 12,000 |
| 1954 | 9,000 |
| 1955 | 7,200 |
| 1956–58 | 8,400 |

During the years 1948–58 the frequent reduction in Carl's salary below $12,000 was due to a lack of money in petitioner's business.

Carl retired on October 14, 1958 (effective December 31, 1958), at the age of 70 because of declining health. The directors and stockholders of petitioner, in recognition of Carl's many years of service, voted him a pension of $7,000 per annum to become effective January 1, 1959. At the time of Carl's retirement he had been connected with petitioner and its predecessor partnership for over 45 years. At the

time of his death on November 9, 1959, Carl had received $5,833.33 of pension income.

Carl never married. During his lifetime he resided with his three sisters, Bertha, Frieda, and Martha. On December 21, 1959, petitioner's directors held a meeting in which they considered action to be taken as a result of Carl's death the previous month. The following is a pertinent excerpt from the minutes of that meeting:

Mr. Carl Nordt, a director and retired Treasurer, had served the John C. Nordt Co., Inc. and its predecessor, the firm of John C. Nordt, a total of more than 45 years. He was head of household and provided the principal support for his sisters, Lydia Nordt (deceased Sept. 1959), Martha E. Nordt, Bertha C. Nordt and Frieda C. Nordt. They had all lived together under one roof for nearly forty years.

Inasmuch as his surviving three sisters were so dependent upon Carl for their livelihood, Paul W. Nordt, Jr. proposed the following resolution:

I move that the corporation make a gratuitous payment of $7,000 to his surviving sisters, with whom he had lived and contributed largely to their support for nearly forty years.

The motion was passed unanimously.

Among petitioner's purposes in awarding the payment of $7,000 to Carl's three surviving sisters was to try to make up in some way for the income that Carl earned but did not receive because of petitioner's financial condition in prior years and Carl's untimely death; also, to show petitioner's concern for its employees and their families.

The following is an excerpt from the minutes of the annual meeting of the stockholders of petitioner held on January 19, 1960:

Paul W. Nordt, Jr., made the following statement:

I am sure that all present join with me in an expression of sorrow at the death on November 9, 1959 of Carl H. Nordt, who served both the corporation and its predecessor firm of John C. Nordt since about 1913. With his pension ceasing as of the payment made in October, 1959, I move that the stockholders confirm the action of the Bd. of Directors Dec. 21, 1959 that the John C. Nordt Co., Inc. make a gratuitous payment of $7,000 to his surviving sisters, with whom he had lived and contributed largely to their support for nearly forty years.

The motion was passed unanimously.

The word "gratuitous," used in the minutes of the meetings of petitioner's directors and stockholders to describe the payment of $7,000 voted to Carl's surviving sisters was inserted to indicate that petitioner had no legal obligation to make such payment. The word "gratuitous" was also intended to avoid includability of the payments in the gross income of the recipients.

On December 15, 1960, at a meeting of petitioner's board of directors, it was unanimously voted "to continue the death benefit payments (due to the death of Carl H. Nordt) to Martha E. Nordt, Bertha C. Nordt, and Frieda C. Nordt, a sum of $5,000 total to be distributed equally among them, on a monthly basis, during the year 1961." The $5,000

payment in 1961 was made under the same theory and for the same purpose as the $7,000 paid in 1960.

Pursuant to the resolutions referred to above, petitioner made payments to Bertha, Frieda, and Martha during 1960 and 1961 as follows:

|  | 1960 | 1961 |
|---|---|---|
| Bertha | $2,333.33 | $1,666.66 |
| Frieda | 2,333.34 | 1,666.67 |
| Martha | 2,333.33 | 1,666.67 |

Petitioner made no further payments to anyone on account of Carl's death.

The $7,000 paid to Carl's surviving sisters in 1960 was claimed as a deduction on page 1 of petitioner's 1960 return as follows:

> [line] 24. Amounts contributed under: (a) Pension, profit-sharing, stock bonus, annuity plans (see instr.)
>
> (b) Other employee benefit plans (see instr.) Pension-Deceased Officer's Ben_____ $7,000

The statutory notice issued to petitioner for 1960 contains the following "Explanation of Adjustments":

> (a) It has been determined that the deduction claimed for 1960 in the amount of $7,000.00 for pension payments to a deceased officer's beneficiaries is not allowable as it does not constitute an ordinary and necessary business expense.

Petitioner's method of claiming the $5,000 deduction on its 1961 return was identical with the reporting of the $7,000 deduction on its 1960 return. Similarly, in the deficiency notice issued by respondent for 1961, the explanation of adjustment disallowing the $5,000 item is identical (except for the amount involved) with that set forth in the explanation of adjustment in the deficiency notice issued for 1960 with respect to the $7,000 item.

In the examination of the income tax returns filed by Bertha, Frieda, and Martha in 1960, the respondent determined that each had received a constructive dividend of $2,333.33. Bertha, Frieda, and Martha each paid additional income tax based on respondent's determination.

On June 15, 1964, Bertha, Frieda, and Martha each filed claims for refund for the taxable year 1960. Each such claim contains the following statement:

> Internal Revenue Service erroneously determined that the claimant-taxpayer received a constructive dividend of $2,233.33 [sic] from John C. Nordt Company, Inc. during 1960. The payment in question was made to claimant as a form of "death benefit" within the meaning of Section 101(b) on account of death of claimant's brother, Carl Nordt. Internal Revenue Service erroneously failed to exclude the amount of the aforesaid payment from claimant's income under Section 101(b).
>
> In the case of John C. Nordt Company, Inc. (Tax Court of the U.S. Docket 578-64), Internal Revenue Service claims the payment in question was not an

allowable business expense of the payor. In the event such contention is sustained, this claim is filed for protective purposes inasmuch as the payment would then constitute a non-taxable gift to the claimant.

In her return for 1961 Frieda reported no part of the $1,666.67 payment from petitioner. Bertha reported the following on a schedule attached to her 1961 return:

Other Income:

| | |
|---|---|
| Amount Received as beneficiary of deceased employee (⅓ of $7,000.00) | $2, 333. 33 |
| Exclusion—⅓ of $5,000.00 | 1, 666. 67 |
| Taxable Income | 666. 66 |

The deficiency notice issued to Bertha makes the following adjustment to 1961 income:

(a) Dividend Income _____ $1, 000. 00
Pro-rata distribution from John C. Nordt Company, Inc., designated as a pension paid to a deceased officer's beneficiary, is includable in your return as dividend income in the entire amount received by you. The adjustment is computed as follows:

| | |
|---|---|
| Pro-rata distribution received by you | $1, 666. 66 |
| Amount reported on your return | 666. 66 |
| Adjustment | 1, 000. 00 |

In the deficiency notice issued to Frieda an adjustment increasing income for 1961 by $1,666.67 is explained as follows:

(a) Dividend Income _____ $1, 666. 67
Pro-rata distribution from John C. Nordt Company, Inc., designated as a pension paid to a deceased officer's beneficiary, is includable in your return as dividend income in the entire amount received by you.

No part of the $5,000 exclusion granted by section 101(b) has been allowed by respondent either to Frieda, Bertha, or Martha with respect to the payments received by them in 1960 and 1961 on account of Carl's death.

Petitioner had an earned surplus of $7,020 as of December 31, 1959, $8,316.44 as of December 31, 1960, and $14,790.88 as of December 31, 1961, and has paid no dividends from the date of its incorporation in 1948 through December 31, 1961.

Petitioner's net profit (or loss) before Federal tax for the years 1948 through 1961 was as follows:

| Year | Amount | Year | Amount |
|---|---|---|---|
| 1948 | $(7, 173. 87) | 1955 | $2, 428. 17 |
| 1949 | (739. 98) | 1956 | 7, 432. 24 |
| 1950 | 8, 922. 22 | 1957 | (36. 80) |
| 1951 | 5, 642. 43 | 1958 | 2, 107. 80 |
| 1952 | (15, 291. 66) | 1959 | 6, 398. 16 |
| 1953 | 5, 357. 65 | 1960 | 1, 874. 59 |
| 1954 | (4, 754. 95) | 1961 | 9, 205. 08 |

It had always been the consistent policy of petitioner to show concern for its employees and their families in cases of death, and to provide fringe benefits to employees as an incentive to loyal and continued service. A few instances evidencing this long-standing, consistent policy include the following:

(a) Upon the death of Gustave Schaeffer, a melter, petitioner paid $200 to his widow.

(b) A woman employee, whose husband died, was paid $50.

(c) Theodore Weisenhorn, Jr., was paid $50 upon the death of his father which occurred before Weisenhorn, Jr., had completed his first year of employment for petitioner.

(d) One employee, Christian Nielsen, received his full pay for over a year while absent due to illness. Shortly thereafter and prior to the taxable years here in question, he was retired on a pension. Upon his death petitioner made a $200 death benefit payment to his widow.

(e) A 19-year old boy employed by petitioner for only 1 year recently received $50 upon the death of his father.

Other than Carl and Christian Nielsen, none of petitioner's employees retired during the years 1948–60.

Prior to 1964 petitioner had no formal plan for paying either retirement or death benefits. However, on no occasion since its incorporation in 1948 has petitioner failed to make a voluntary payment in connection with the retirement or death of an employee.

Loyalty on the part of employees is particularly important to petitioner because it cannot afford the cost of full-time protection against gold thefts. When petitioner gets trustworthy employees, it wants to hold them. Toward this end, in addition to the payment of death benefits, full sick pay, and voluntary retirement benefits, and since its incorporation in 1948, petitioner provided its employees with a fully paid hospital and surgical plan, fully paid life insurance coverage, and fully paid vacations without an eligibility waiting period. In 1964 petitioner adopted a profit-sharing plan which had not been feasible previously because of insufficient profits.

The payments made by petitioner on the death of Carl and the others mentioned above were known to petitioner's employees generally and greatly increased their loyalty to petitioner. Petitioner's turnover in their shop employees was negligible.

Petitioner's informal but consistent policy of paying employee death benefits is in keeping with its overall policy of providing employee incentives.

Bertha was born on February 5, 1886. Prior to petitioner's move to Cedar Grove in 1954 Bertha served for many years as an office manager and secretary for petitioner. Her duties included handling telephone calls, taking charge of the office and office procedures, the counting,

weighing, and wrapping of completed gold rings, and the preparation of bills. At all times up to the present Bertha has rendered valuable services to petitioner, particularly in the matter of extending credit to customers.

Since the incorporation of petitioner in 1948 Bertha has received the following salaries:

| Years | Salary |
|---|---|
| 1948–54 | $4,800.00 |
| 1955 | 480.00 |
| 1956–57 | 1,200.00 |
| 1958–59 | 3,046.32 |
| 1960–64 | 1,200.00 |

Petitioner reduced Bertha's salary in 1955 because business was bad and petitioner was short of cash. Bertha was worth far more to petitioner than she received as salary.

Bertha's salary was increased to $3,046.32 in 1958 and 1959 in order to compensate her for prior years when her services to petitioner had been worth more than petitioner could afford to pay her.

Although Bertha, and to some extent Martha and Frieda, rendered counsel to petitioner from time to time, at no time were Bertha, Martha, or Frieda ever in a position of control or significant influence over petitioner's operation and business affairs or in a position to dictate policies or operations of petitioner.

### ULTIMATE FACTS

The salary paid to Bertha in 1959 amounting to $3,046.32 was fair and reasonable, in view of the current and past services rendered by Bertha, and such payments constituted an ordinary and necessary expense incurred by petitioner in the operation of its business.

The amounts of $7,000 and $5,000 paid by petitioner in 1960 and 1961, respectively, to Carl's surviving sisters as a death benefit on account of past services performed by Carl were reasonable in amount and constituted an ordinary and necessary expense incurred by petitioner in the operation of its business.

### OPINION

Little need be said regarding the first issue. We have considered all of the evidence and have found as an ultimate fact that the salary of $3,046.32 paid by petitioner to Bertha in 1959 was for current and past services rendered by Bertha to petitioner and that it was fair and reasonable in amount. We hold that the respondent erred in disallowing $1,846.32 of the amount so paid. Sec. 162 (a)(1), I.R.C. 1954; *Lucas* v. *Ox Fibre Brush Co.*, 281 U.S. 115 (1930); *General Smelting Co.*, 4 T.C. 313, 320; *Associated Theatres Corporation*, 14 T.C. 313, 320; *Perel & Lowenstein, Inc.* v. *Commissioner*, 237 F. 2d

908 (C.A. 6, 1956), affirming per curiam a Memorandum Opinion of this Court.

On the second issue the material provisions of the Internal Revenue Code of 1954 are in the margin.[2]

Sections 162 (a)(1) and 404(a) of the 1954 Code are derived, respectively, from section 23 (a) and (p) of the 1939 Code. Paragraphs (1), (2), and (3) of section 404(a) relate to Pension Trusts, Employee's Annuities, and Stock Bonus and Profit-Sharing Trusts, and are not applicable herein. Section 212, relating to expenses for the production of income, is likewise not applicable.

We think it is clear that the amounts of $7,000 and $5,000 paid by petitioner in 1960 and 1961, respectively, to Bertha, Frieda, and

---

[2] SEC. 101. CERTAIN DEATH BENEFITS.

(b) EMPLOYEES' DEATH BENEFITS.—

(1) GENERAL RULE.—Gross income does not include amounts received (whether in a single sum or otherwise) by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee.

(2) SPECIAL RULES FOR PARAGRAPH (1).—

(A) $5,000 limitation.—The aggregate amounts excludable under paragraph (1) with respect to the death of any employee shall not exceed $5,000.

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.

(a) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation *shall not be deductible under section 162* (relating to trade or business expenses) or section 212 (relating to expenses for the production of income; *but, if they satisfy the conditions of either of such sections, they shall be deductible under this section,* subject, however, to the following limitations as to the amounts deductible in any year:

(1) PENSION TRUSTS.—* * *

* * * * * * *

(2) EMPLOYEES' ANNUITIES.—* * *

* * * * * * *

(3) STOCK BONUS AND PROFIT-SHARING TRUSTS.—

* * * * * * *

(4) TRUSTS CREATED OR ORGANIZED OUTSIDE THE UNITED STATES.—* * *

* * * * * * *

(5) OTHER PLANS.—In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

* * * * * * *

(7) LIMIT OF DEDUCTION.—

(b) METHOD OF CONTRIBUTIONS, ETC., HAVING THE EFFECT OF A PLAN.—*If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation, subsection (a) shall apply as if there were such a plan.*

[Emphasis supplied.]

Martha were "Death Benefits" as that term is used in section 101(b). They were amounts received by the beneficiaries (the three sisters) of an employee (Carl). They were paid by an employer (the petitioner) and they were paid by reason of the death of the employee (Carl). The principal question is whether the amounts so paid are deductible by the payor (the petitioner).

Petitioner contends that the many cases involving a question like this all say one thing, namely, "a payment made to beneficiaries of a deceased employee is deductible if made pursuant to a 'plan' within the meaning of section 404(a)(5), provided only the 'ordinary,' 'necessary,' and 'reasonable compensation' tests of section 162(a)(1) are met." Petitioner cites *Fifth Avenue Coach Lines, Inc.*, 31 T.C. 1080 (issue 1), affirmed and reversed on other issues 281 F. 2d 556 (C.A. 2, 1960), certiorari denied 366 U.S. 964, as the leading case in support of the deduction.

Because the three sisters were stockholders of petitioner, respondent has determined and contends that the payments made by petitioner were in effect nondeductible dividends, relying principally upon *Schner-Block Co.* v. *Commissioner*, 329 F. 2d 875 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court.

We think the payments in question are controlled by that part of section 1.404(a)–12 of the regulations under section 404(a)(5) of the Code, which provides:

Similarly, if amounts are paid as a death benefit to the *beneficiaries of an employee* (for example, by continuing his salary *for a reasonable period*), *and if such amounts meet the requirements of section 162* or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). * * * [Emphasis supplied. Note: We have already indicated above that "the other paragraphs of section 404(a)" are not applicable here.]

Section 404(a)(5) is a "catch-all provision" intended to cover plans which do not fall under the formal categories (such as pension trusts, employee's annuities, and stock bonus and profit-sharing trusts) described in paragraphs (1), (2), and (3) of subsection (a). This is made clear by the above-mentioned regulations, the material part of which is set out in the margin.[3]

---

[3] Sec. 1.404(a)–12. * * * application of section 404(a)(5).

Section 404(a)(5) covers all cases for which deductions are allowable under section 404(a) but not allowable under paragraphs (1), (2), (3), (4), or (7) of such section. * * * If unfunded pensions are paid directly to former employees, their rights to such payments are nonforfeitable, and accordingly, such amounts are deductible under section 404(a)(5) when paid. *Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a).* * * * If an amount is accrued but not paid during the taxable year, no deduction is allowable for such amount for such year. * * * [Emphasis supplied.]

Neither the regulations nor the Code itself purports to answer the question of what constitutes "a [Death Benefit] plan" under section 404(a)(5). It clearly appears that such a plan will be deemed to exist, even though informal and unwritten, when it has been followed, as in the instant case, with such consistency that other employees may fairly expect that in the event of death their beneficiaries would be similarly treated. *Tomlinson* v. *Hine*, 329 F. 2d 462 (C.A. 5, 1964). In that case the court, in reversing the U.S. District Court for the Middle District of Florida, determined that a payment of $10,000 by a corporation to the widow of one of its deceased employees was made for a business purpose and with expectation of economic benefit and was therefore income to the widow rather than a gift and, in the course of its opinion, said:

No finding was made as to whether there was a plan or practice for the making of payments to widows of deceased employees. There can be no doubt but that such a plan and practice existed and had existed for a number of years, although the amounts of such payments were not uniform and were determined by rather intangible standards. It is not necessary that there be any formal statement or declaration of a plan in order for it to exist. * * *

To the same effect see *Simpson* v. *United States*, 261 F. 2d 497 (C.A. 7, 1958), certiorari denied 359 U.S. 944; and *Gaugler* v. *United States*, 204 F. Supp. 493 (S.D. N.Y. 1962), affirmed 312 F. 2d 681 (C.A. 2, 1963). See also sec. 404(b), I.R.C. 1954,[4] and the regulations thereunder, sec. 1.404(b)–1.[5]

It may be well to reiterate here what we said in our opening statement that neither Bertha nor Frieda contends that the amount received by her was a gift but concedes that the amount is taxable income to her except for the $5,000 exclusion under section 101(b)(2)(A), *supra*, a point we will consider under issue 3, *infra*.

In our findings we have found that among petitioner's purposes in awarding the payments of $7,000 and $5,000 to Carl's three surviving sisters was to try to make up in some way for the income that Carl earned but did not receive because of petitioner's financial condition in prior years and Carl's untimely death; and to show petitioner's concern for its employees and their families. We do not think there can be

---

[4] Contained in fn. 2.

[5] Sec. 1.404(b)–1. Method of contribution, etc., having the effect of a plan; effect of section 404(b).

Section 404(a) is not confined to formal stock bonus, pension, profit-sharing, and annuity plans, or deferred compensation plans, *but it includes any method of contributions or compensation having the effect of a* stock bonus, pension, profit-sharing, or annuity plan, or *similar plan deferring the receipt of compensation.* Thus, where a corporation pays pensions to a retired employee or employees *or to their beneficiaries* in such amounts as may be determined from time to time by the board of directors or responsible officers of the company, or where a corporation is under an obligation, whether funded or unfunded, to pay a pension *or other deferred compensation to an employee or his beneficiaries, there is a method having the effect of a plan deferring the receipt of compensation for which deductions are governed by section 404(a).* [Emphasis supplied.]

any question but that petitioner has sustained its burden of establishing the business purpose or anticipated economic benefit to petitioner of the payments made; and that such payments were ordinary, necessary, and reasonable in amounts. Furthermore, we do not think they exceeded the "reasonable period" provided in section 1.404(a)–12 of the regulations, *supra*. We think what we said in *Fifth Avenue Coach Lines, Inc.*, *supra* at 1094, is equally applicable here:

The motives for making the payments here involved are ambiguous and multiple; such is often the case. In *Peters* v. *Smith*, 221 F. 2d 721, 725 (C.A. 3, 1955), it was noted that "the employer in providing the questioned payments did not indicate unequivocally whether such action was intended as additional compensation for past services, or merely as an expression of a philanthropic attitude, or as a bid for employee good will, or as some combination of these." In the instant case, we find that the payments to Sheeran's widow were intended in part as additional compensation for past services rendered by Sheeran, in part to show gratitude for such past services, and in part to aid in the support of Sheeran's widow.

We have made similar findings in this proceeding which need not be repeated here. We think the evidence in the instant case shows that the principal intention of the $7,000 and $5,000 payments by petitioner to the three sisters of Carl were in recognition of the past services rendered petitioner by Carl; that they were reasonable in amount; and that they were "for a reasonable period" as that phrase is used in section 1.404(a)–12 of the regulations, *supra*.

We do not think the evidence shows that the payments were in any way intended as constructive dividends. It is true that the three sisters were minority stockholders in petitioner and were beneficiaries of the trust set up by their brother Carl. It is also true that the sisters voted at the stockholders meetings. But in so doing, they were never in a position to and did not dictate the policies or operations of the petitioner. This case is distinguishable upon its facts from *Schner-Block Co.* v. *Commissioner*, *supra*, in that the monthly payments of $200 in that case to the widow of the corporation's founder was for the rest of her life and had been paid to her for 6 continuous years, whereas the payments here in question were limited to Carl's full salary for 1 year and were within the "reasonable period" mentioned in section 1.404(a)–12 of the regulations, *supra*.

In conclusion, we think it is clear that the payments to Carl's sisters were intended as death benefits to the sisters as beneficiaries of Carl; that they were made in recognition of Carl's long and valuable past services to petitioner, for which he was inadequately paid; that the payments were reasonable in amount; that they were for a "reasonable period;" that they served a genuine business purpose by fostering employee incentive and morale; and that the payments come squarely within section 1.404(a)–12 of the regulations issued under section

404(a)(5). Accordingly, we hold that the amounts are deductible by petitioner under section 404(a)(5) of the 1954 Code.

On the final issue we have already indicated that the payments of $7,000 in 1960 and $5,000 in 1961 were "Death Benefits" as that term is used in section 101(b), *supra*. Our only question here is the application of the $5,000 limitation provided for in section 101(b)(2)(A). See fn. 2. The regulations, insofar as they are material, are in the margin.[6]

The payments which petitioner made in 1960 and 1961 to Carl's surviving sisters as the result of Carl's death on November 9, 1959, were as follows:

| Payee | 1960 | 1961 |
|---|---|---|
| Bertha | $2,333.33 | $1,666.66 |
| Frieda | 2,333.34 | 1,666.67 |
| Martha | 2,333.33 | 1,666.67 |

It is clear from the statute and the regulations that Bertha and Frieda can each only exclude one-third of the $5,000 exclusion, or $1,666.66. They each received more than that amount in 1960 but up to this time they have not received the benefit of any exclusion. As far as the individuals are concerned, the year 1960 is not before us. All three sisters, however, have filed claims for refund for the year 1960 in which they allege that the payments received in 1960 were death benefits within the meaning of section 101(b) and that "Internal Revenue Service erroneously failed to exclude the amount of the aforesaid payment [$2,333.33] from claimant's income under Section 101(b)." Petitioners Bertha and Frieda now argue in their brief as follows:

Nothing in Section 101(b) or in respondent's regulations requires the $5,000 exclusion to be applied with respect to the $7,000 paid in 1960 rather than the $5,000 paid in 1961. The sole limitation contained in Section 101(b)(2) is that "the aggregate amounts excludible under paragraph (1) with respect to the

---

[6] Sec. 1.101–2. Employees' death benefits.

(a) *In general.* (1) Section 101(b) states the general rule that amounts up to $5,000 which are paid to the beneficiaries or the estate of an employee, or former employee, by or on behalf of an employer and by reason of the death of the employee shall be excluded from the gross income of the recipient. This exclusion from gross income applies whether payment is made to the estate of the employee or to any beneficiary (individual, corporation, or partnership), whether it is made directly or in trust, and whether or not it is made pursuant to a contractual obligation of the employer. The exclusion applies whether payment is made in a single sum or otherwise * * *

* * * * * * *

(3) The total amount excludable with respect to any employee may not exceed $5,000, regardless of the number of employers or the number of beneficiaries. For allocation of the exclusion among beneficiaries, see paragraph (c) of this section. * * *

* * * * * * *

(c) *Allocation of the exclusion.* (1) Where the aggregate payments by or on behalf of an employer or employers as death benefits to the beneficiaries or the estate of a deceased employee exceed $5,000, the $5,000 exclusion shall be apportioned among them in the same proportion as the amount received by or the present value of the amount payable to each bears to the total death benefits paid or payable by or on behalf of the employer or employers.

death of any employee shall not exceed $5,000". Inasmuch as the effect of the additional taxes paid by Bertha, Frieda, and Martha for 1960 is that no part of the payments received by them in 1960 has been excluded, no violence is done to Section 101(b) if Bertha and Frieda are permitted to exclude the $1,666.66 and $1,666.67, respectively, received by them in 1961. Martha's case is not before the Court, but she definitely has *not* been allowed any portion of the exclusion under Section 101(b). If the Court sustains Bertha and Frieda under this point, they will, of course, abandon any claim for refund of income tax for 1960.

The respondent contends that if section 101(b) is applicable, and we hold it is, then the amounts excludable under section 101(b)(1) up to the limitation of $5,000 shall apply to the first amounts received and, since more than $5,000 was received in 1960, no part of the amounts received in 1961 would be excludable.

We know of no case involving this precise point. We think the respondent's position is more in line with the statute and regulations than is the position taken by petitioners Bertha and Frieda. We come close to the question in *Lottie Robinson*, 42 T.C. 403. In that case the taxpayer became entitled to a pension from the Police Relief Fund of Columbus upon the death of her husband on August 30, 1939. She received a pension from that date throughout the year 1958. At the time she began to receive the pension there was no statute similar to section 101(b) of the 1954 Code. Such a similar provision did not appear until section 22(b)(1) of the 1939 Code was amended by section 302 of the Revenue Act of 1951 to take effect "with respect to taxable years beginning after December 31, 1950." Prior to January 1, 1951, the taxpayer had received pension payments totaling over $5,000 and for the years 1951 through 1955 she received pension payments totaling $3,600. The taxable years before this Court were the years 1956, 1957, and 1958. Because the taxpayer's husband had died prior to the enactment of the 1954 Code, section 22(b)(1) of the 1939 Code was expressly made applicable to the payments received in 1956, 1957, and 1958 by section 101(f) of the 1954 Code. After reciting the above factors, we said:

We, therefore, hold section 22(b)(1)(B) of the Internal Revenue Code of 1939 to be applicable to the payments received by petitioner in the years here in issue. Under these provisions the aggregate of the amounts excludable may not exceed $5,000. The record shows that prior to January 1, 1951, petitioner had received in excess of $5,000 which she had not reported as taxable income. For the years 1951, 1952, 1953, 1954, and 1955 petitioner had received a total of $3,600 which she had not reported as taxable income. The inference from the record is that after January 1, 1951, petitioner was the only person receiving benefits from the city of Columbus because of petitioner's husband's death. For years prior to January 1, 1951, petitioner should have reported her pension payments as taxable income. No portion of these payments was excludable from income during those years by applicable law. The fact that these payments were not included in petitioner's taxable income for the years 1939 through 1950 means that petitioner incorrectly reported her income for these years but does not make the amounts so omitted from her income excludable therefrom as a

matter of law. Therefore, no amounts which petitioner had received by reason of her husband's death prior to 1951 were a part of the aggregate of the amounts excludable from her income. From 1951 to the beginning of 1956, petitioner had received $3,600 of payments because of her husband's death which were "excludible" under section 22(b)(1)(B) of the Internal Revenue Code of 1939, leaving the amount of $1,400 which petitioner was still entitled to exclude. Petitioner received $720 in 1956 leaving $680 excludable in 1957. We therefore hold that respondent * * * was correct in including the entire amounts received in 1958 in her taxable income for that year.

On the basis of the reasoning employed in *Lottie Robinson, supra*, we hold petitioners Bertha and Frieda are not entitled to any exclusion under section 101(b) of the 1954 Code of the death benefits received by them in the year 1961.

*Decisions will be entered under Rule 50.*