**RUBBER ASSOCIATES, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 15560.

United States Court of Appeals
Sixth Circuit.

July 20, 1964.

James M. Hinton, Akron, Ohio, for petitioner.

Robert J. Golten, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attorneys, Department of Justice, Washington, D. C., on brief, for respondent.

Before WEICK, Chief Judge, CECIL, Circuit Judge, and WILLIAM E. MILLER, District Judge.

WILLIAM E. MILLER, District Judge.

The question for decision is whether the Tax Court correctly found that pay-ments by the taxpayer corporation to widows of shareholders represented nondeductible distributions of profits, rather than deductible ordinary and necessary business expenses under Sections 162(a) (1) and 404(a) (5) of the 1954 Internal Revenue Code.[1]

The material facts were stipulated and are essentially as follows: Rubber Associates, Inc. was organized on March 1, 1953 by five men (Glass, Bowie, Brasaemle, Brueggeman, and Brouse). The incorporators each received 20% of the corporate stock and they became the sole officers and directors of the corporation. At a meeting of the board of directors on April 25, 1953 (as amended June 27, 1953), it was resolved that if anyone "takes another job outside of Rubber Associates, Inc. and is unable to perform work or becomes inactive his salary would immediately revert back to 63% of salary. * * *" On May 3, 1953, another directors' meeting was held and it was then provided that "in case of anyone wanting to withdraw, he can sell his stock only back to the corporation to the remaining members." At the same meeting it was further agreed:

"These same conditions [are] to apply in case of death, where the widow or beneficiary wants to sell. However, if they decide to retain stock, same provisions remain theirs in regards to board of directors, bonus, pay, etc., on scale set to cover active and nonactive members. However, a widow shall not become an active member of the organiza-

1. These sections are as follows: (26 U.S. C.A.)

Section 162(a)—"In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—(1) a reasonable allowance for salaries or other compensation for personal services actually rendered."

Section 404(a) "General rule.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 * * *; but if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

"(5) Other plans—In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid."

tion. * * * Stock cannot be sold to anyone except the five Incorporators or widow of same if such is the case."

H. D. Glass, President of the corporation, died on November 16, 1956, and H. G. Bowie, one of two vice presidents, died on May 14, 1957. The remaining three directors met on July 27, 1957 and, as reflected by the corporate minutes, held a preliminary discussion on the reasonable length of time that the widows of Glass and Bowie were to be paid. Such "reasonable time" was fixed on May 16, 1958 at 18 months from the time of death of the deceased shareholder or until the surrender of the stock to the company, whichever occurred first. The resolution to this effect provided:

"A widow, who prefers to retain her deceased husband's stock in the Company shall receive a salary for a period of 18 months on the percentage basis set for an inactive member during that time including month of expiration. However, if stock is sold back into the Company before this period of time, salary shall cease at the end of month sale is consummated."

At the time of their deaths, Glass and Bowie were earning $1,350 per month as salary, plus bonuses. The taxpayer paid to Mrs. Glass during 1957 and for the first five months of 1958, 63% of $1,350 per month, the total of such payments amounting in 1957 to $10,200 and in 1958 to $4,270. (Mrs. Glass surrendered her stock certificate on May 28, 1958.) She was also given bonuses amounting to $5,370 in 1957 and $2,250 in 1958. The taxpayer claimed these payments as deductible compensation to officers in 1957 and as salaries and wages in 1958.

In 1957 Mrs. Bowie received $6,532.50 representing 63% of the salary her deceased husband had been receiving from taxpayer's two divisions. She was paid bonuses totaling $2,500. In 1958 she received $8,137.50 in monthly payments from the taxpayer as well as a bonus of $2,250. As in the case of Mrs. Glass, the taxpayer claims these payments as deductible compensation for officers in 1957 and as salaries and wages in 1958. No services were performed by either Mrs. Glass or Mrs. Bowie for the taxpayer during the taxable years.

The claimed deductions were disallowed by the Commissioner and the Tax Court upheld the disallowance, finding that the payments were made because of stock ownership and as such represented non-deductible distribution of profits rather than ordinary and necessary business expenses. Deficiencies were assessed in the amount of $12,793.30 for 1957 and $5,026.09 for 1958, pursuant to the Tax Court's order of May 1, 1963.

■ We agree with the Tax Court that in order to prevail the taxpayer must show that the payments were ordinary and necessary business expenses and that they were proximately related to its business. That is to say, to be deductible under § 404(a) it is necessary that the payments satisfy the provisions of Section 162, allowing a deduction for all "the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" including a reasonable allowance for salary or other compensation for personal services actually rendered. Interstate Drop Forge Co. v. Commissioner, 326 F.2d 743 (7th Cir. 1964). The Tax Court was of the view that this burden had not been carried. It found in its memorandum opinion:[2]

"We are led inescapably to the conclusion that the payments in question were distributions of profits and not deductible expenses. Barbourville Brick Co., 37 T.C. 7 (1961). There is no evidence to indicate that the payments were made for any other reason than because of stock ownership. Consequently, the payments were dividends and not ordinary and necessary business expenses. Section 316, 1954 Code."

2. T. C. Memo.1963–121.

Whether in a particular case a corporate payment to a widow-stockholder constitutes an ordinary and necessary business expense of the corporation, or a distribution of profits or a dividend is to be determined upon the facts of each case. A review of the decisions discloses that there is no magic formula to resolve the issue. Nor has any case been cited to us which could be said to establish a governing precedent.

The cases cited by the respondent in support of his position are all distinguishable on their facts. In Interstate Drop Forge Co. v. Commissioner, 326 F.2d 743 (7th Cir. 1964), the Court affirmed the finding of the Tax Court that a $30,000 lump sum payment made to the widow of the president of the taxpayer corporation was a gratuity and not for past due compensation. The corporate resolution awarding the grant stated that "this payment is considered a gratuity." There was no evidence of any general employee pension plan or that widows of other employees would be similarly treated. Nickerson Lumber Co. v. United States, 214 F.Supp. 87 (D. Mass.1963), involved a closely held family corporation. After the father who was chairman of the board died at age 88 his five children who were all stockholders voted themselves a pension for his services. The Court looked through the corporate device and considered the payment not as compensation for past services, but as merely a device for distribution of income of the corporation, a constructive dividend. Similarly, in Barbourville Brick Co. v. Commissioner, 37 T.C. 7 (1961), the president of the company died, leaving his widow in control of 168 of the outstanding 180 shares of stock. The "corporation" voted to extend to her the salary paid to her husband for six months. The Court, quoting from Simon v. Commissioner, 248 F. 2d 869 (8th Cir. 1957), stated the applicable rule:

"Courts have frequently, and apparently uniformly, held that where controlling stockholders divert corporate income to themselves, such diverted funds should be treated as constructive dividends." (37 T.C. p. 13)

And in the concurring opinion of Judge Bruce it was pointed out that:

"[T]here is neither claim nor showing that the payments in question were in the nature of extra compensation for past services rendered by petitioner's deceased president." (37 T.C. p. 18)

Following this line of cases which turn on an apparent family plan to divert income, without any basis for treating it as compensation for services actually rendered, is Frederick Pfeifer Corporation v. Commissioner, 14 T.C. 569 (1950). There Pfeifer on advice of his attorney, set up a corporation in 1944 when he was 82 or 83 years old. He transferred his hardware business to the corporation in exchange for all the stock and an agreement on the part of the "corporation" to pay to his widow a pension for her life after he died. He died shortly after this transaction and left all the stock to his two sons. The widow had no stock. The Court said that these pension payments were not for a valid business purpose.

"Here there was no established pension policy and no showing that the payments were for past compensation and were reasonable in amount."

Perhaps more important was the consideration that this was not an arm's length transaction. "He was in effect dealing with himself."

Even without the "family flavor" such payments in some instances have been found non-deductible. In Mobile Bar Pilots Association v. Commissioner, 35 BTA 12 (1936), $2144 was paid by the association to the widow of a deceased member "in consideration of his good and faithful services rendered in the past." But as the Board pointed out "[t]here [was] no evidence in the record showing that such amount was *reasonable* additional compensation for the services rendered by him prior to his death."

In addition to the question of compensation for services, another factor considered by the Courts is whether the payments are conditioned upon retention of stock. In Standard Asbestos Manufacturing & Insulating Co. v. Commissioner, 276 F.2d 289 (8th Cir. 1960), a father and his sons were the sole stockholders. The Court would not allow deduction of payments to the widow of a deceased stockholder-employee pursuant to an agreement that provided a pension amounting to 50% of deceased's salary so long as the widow retained her stock. The Court cited the Astorian and Union Packing Company cases, infra, for the proposition that payments conditioned solely upon stock ownership are dividends and not deductible business expenses. In Astorian-Budget Publishing Co. v. Commissioner, 44 BTA 969 (1941), four men owned all the stock in a newspaper. To protect their dependents they agreed that in the event of the death of any one of them the salary paid each as an officer or director should be thereafter paid to his widow, or next of kin, as long as such widow or next of kin continued to hold the inherited stock. One died and his stock went to his sister as next of kin. The Board would not permit deduction of more than that amount reasonably paid to compensate the sister for the services as director actually rendered by her to the company. The Court observed:

> "However, the only limitation of time on the payment is the period that Dorothy Engle continues to hold the stock. Such a provision bears more earmarks of a special provision for the distribution of profits to an officer-stockholder than it does a pension agreement."

The Court in Union Stock Farms v. Commissioner, 265 F.2d 712, 726 (9th Cir. 1959), would not permit the corporation to deduct the amount of payments made to the widow of a deceased officer-stockholder. The company paid salaries to the widow pursuant to an agreement between Adolph and Glen Shivel "that upon the death of either, the survivor *would cause the corporation* to pay the widow of the other an amount equal to one-half the salary of the survivor." (Emphasis supplied.) The Court held that the deductibility of these payments was a question of fact and that the facts were *highly persuasive*:

> "The Tax Court concluded that Mrs. Shivel 'received this money by virtue of her stockholdings and as a dividend,' relying on these facts: (1) Packing as a corporation had no agreement with Mrs. Shivel; (2) Mrs. Shivel performed no services for the corporation; and (3) the payments terminated when she sold her stock."

The payments continued over a long period of time (1940 to 1947) and there was no provision for limitation of time other than by sale of the stock.

In one case both elements were present. In Fifteenth & Chestnut Realty Co. v. Commissioner, 29 BTA 1030 (1934), two men each owned one-half of the stock in a corporation owning a large office building. Apparently they did not actively engage in the management and maintenance of the property. Nevertheless they drew large salaries as officers and directors. They agreed that in the event either died the corporation would pay his entire salary to his estate for thirty years, or so long as the stock was not sold by the estate. The money paid to deceased's estate was held (very properly) not to be a salary or other compensation for personal services actually rendered and thus not in any respect an ordinary and necessary business expense.

Finally, it should be observed that the case of Lengsfield, et al. v. Commissioner, 241 F.2d 508 (5th Cir. 1957), is only authority for the general proposition that "[w]hether or not a corporate distribution is a dividend or something else, such as a gift [or], compensation for services, * * * presents a question of fact to be determined in each case." There the sole question before the Court was whether the payments were taxable to the recipient.

It must be conceded that the cases cited by the taxpayer are also distinguishable and not dispositive of this case. In Fifth Avenue Coach Lines, Inc. v. Commissioner, 31 T.C. 1080 (1959), the president of the petitioner corporation died. The corporation voted to pay the entire amount of his salary to his widow for a period of time, and then a lesser amount. The issue was whether or not this award was a gratuity or made for a business purpose. The Court found that the payment to the widow was compensation for her husband's work and reasonable in amount ($90,000 over six years) in light of his contributions to the financial welfare of the corporation and relatively low salary paid him during the period that he was engaged in getting the corporation out of the red. However, as pointed out by the brief for respondent, "[N]either Sheeran nor his widow were stockholders of petitioner, and the rule of close scrutiny of transactions involving stockholder-officers is not applicable here."

In I. Putnam, Inc. v. Commissioner, 15 T.C. 86 (1950), Putnam and another had owned all the stock. Putnam retired on a pension, then the corporation agreed that when Putnam died his wife would be entitled to his pension. The Court held that these were voluntary payments to be made for a limited period. The Commissioner had limited the period of deductibility to 18 months. The Court raised this to 24 months. (There is no indication whether or not she owned any of the stock). Similarly, in McLaughlin Gormley King Co. v. Commissioner, 11 T.C. 569 (1948), when the president of a "one-man" business died the corporation voted a pension for his widow. The amount to be paid her was to be reduced by any amount paid by the corporation in dividends to the trustee of stock held for the widow. The Commissioner had permitted deductions for 29 months. The Court agreed with his refusal to go further since there was no showing that payments made beyond 29 months were a part of reasonable compensation for past services rendered by

the deceased. (He had built the corporation up from $40,000 in 1908, to $500,000 in 1920, but had never drawn more than $5,000 in salary in any year).

In Schner-Block Company v. Commissioner, 329 F.2d 875 (2d Cir. 1964), the Court of Appeals affirmed the Tax Court's holding that certain payments made by the corporation to the widow of its founder were not deductible as ordinary and necessary business expenses:

> "[I]t is the Tax Court's function to draw a primary inference from evidentiary facts, which must be sustained on appeal unless it appears wholly unwarranted. (Citations omitted). In this case, the Tax Court properly held that the fact that on one previous occasion the corporation had voted to continue the salary of a deceased employee for 10 months did not establish that it had a plan within the meaning of section 404(a) (5). We further think that the facts that no dividends had ever been paid on stock, that Florence Schner was a director and holder of one-third of the preferred, that her children owned all the rest of the stock, *and that the payments were not limited in time* but were to continue for the rest of her life, fully justified the Court's holdings that they were not ordinary and necessary expenses of the business * * *."

On the other hand, in Oppenheimer Casing Co. v. Commissioner, T.C.M. 1963-216, 22 T.C.M. 1082, there was a family owned corporation, and although there was no pre-existing agreement there had been precedents where pensions were paid to widows. In that case, the Tax Court stated:

> "In our opinion the record amply supports our finding that the directors of the petitioner, with the dual objective of paying additional compensation for the valuable services rendered by Edward to petitioner during the period of 26 years prior to his death in 1958 and of providing

his widow Florine with some economic security following Edward's death, authorized the payment to her of $40,000 in monthly installments over a period of two years. The record is clear that except for the services rendered by Edward the directors of petitioner never would have considered making any payment to Florine."

From this review, it can be seen that no one factor is necessarily controlling and that the purpose and character of the payment must be derived from the collocation of facts in each instance. Stock ownership, "family flavor," amount, limitation as to time, and a variety of other factors enter into the determination. But we are unable to find any hard and fast rule that stock ownership alone is sufficient to fasten the payments with the fictional label of "constructive dividends."

██ It is true that the finding of the Tax Court should not be disturbed unless it is clearly erroneous. Louisville Chair Co. v. United States, 296 F.2d 621, 622 (CA 6); Standard Asbestos Manufacturing & Insulating Co. v. Commissioner, 276 F.2d 289, 296 (CA 8); Union Stock Farms v. Commissioner, 265 F.2d 712, 726 (CA 9). But can it fairly be said, as the Tax Court concluded, that there is no evidence indicating that the payments were made for any reason other than stock ownership? Can it not be reasonably concluded from the evidence, including the corporate resolutions, that the prime motivating purpose of the officers and directors of the corporation was to provide income to widows for a limited and reasonable period as part of a bona fide method of additional compensation for the services actually rendered to the corporation by the deceased stockholder-employees? We think that such an inference can and should be drawn from the stipulated facts and from the terms of the corporate resolutions, although they were admittedly inexpertly if not awkwardly drafted. The condition with respect to retention of stock by the widows, in our view, was over-emphasized by the Tax Court. Such a condition instead of being the source or impetus behind the provision for the payments, appears to us to be explainable as a further limitation on the time the payments should continue. Essentially the facts in this case are that five men, apparently unrelated and owning all of the stock of the corporation, entered into an arm's length business transaction. Acting through the corporation, they agreed among themselves that as a part of their compensation as officers of the corporation, a plan for salary payments to widows would be provided, constituting in effect an intra-group pension plan. Several years after the corporation announced its policy in this regard, a stockholder-officer died and payments were made to his widow in accordance with the agreement. Soon afterwards, a second officer died and upon advice of a tax consultant, the corporation placed a limitation on the payments of 18 months from the time of death. From the outset of the venture, the organizers had stated that the stock could not be sold outside the group. They did not carefully distinguish between sales to stockholders individually or to the corporation as a separate entity. Although as a matter of law the restriction on the sale of stock may not be binding or may at most only amount to provision for a first option to purchase, nevertheless, among themselves, no one anticipated that the stock would be sold to outsiders. In providing for bonuses and partial salary to surviving widows, the corporation stipulated that such payments would cease upon sale of the stock to the corporation. However, ownership of stock alone was not sufficient to entitle the holder to receive the payments since they were to be made only to the widows of the officer-stockholders. The corporate action fairly reflects in our opinion a plan, equally applicable to all officers, as an incentive to each and as additional compensation for their services, taking the form of a widow's benefit.

For the reasons herein indicated, the decision of the Tax Court is reversed.