Way Baking Company v. Commissioner.
Way Baking Co. v. Commissioner
Docket No. 816-64.
United States Tax Court
T.C. Memo 1968-37; 1968 Tax Ct. Memo LEXIS 258; 27 T.C.M. (CCH) 168; T.C.M. (RIA) 68037; February 29, 1968. Filed *258 1. Held, that cash amounts which the petitioner paid to or applied for the benefit of the widow of its former president who died after 27 years of active service for which he was inadequately paid are deductible as death benefits in the nature of deferred compensation, under the provisions of section 404(a)(5) and (b) of the Internal Revenue Code of 1954 and income tax regulations pertaining thereto. Held, further, that this is true, also, of amounts of similar character which petitioner paid to the widow of its former vice-president. 2. Held, that deductions claimed by petitioner for depreciation and operating expenses respecting two automobiles which it furnished to the abovementioned widows for their sole personal use are not allowable. 3. Held also, that petitioner is not entitled to deduct its "book value" for one of said automobiles, upon its transferring the title therefor to one of the widows. Edward L. Cobb, 410 National Bank Bldg., Jackson, Mich., for the petitioner. Chauncey W. Tuttle, Jr., for the respondent. 169 PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The Commissioner determined deficiencies in the income taxes of the petitioner-corporation, as *259 follows: Taxable Year Ended
Deficiency
12/28/1958
$5,136.00
12/29/1958 to 9/26/1959 *
4,807.00
9/24/1960
4,604.12
9/30/1961
3,001.54
The issues for decision are: I. Whether, for each of said taxable years, the petitioner is entitled to deduct, under section 404(a)(5) and related provisions of the 1954 Code, the cash payments which it made to or applied for the benefit of the widow of Harry E. Way, its former president, who died in 1954 after approximately 27 years of active service as petitioner's chief executive officer. II. Similarly, whether petitioner may deduct, for each of the first two of said taxable years, cash payments which it made to the widow of Richard H. Way, its former vice-president, who died in 1958 after many years of active service as an officer. III. Whether petitioner is entitled to deduct', *260 for certain of the above taxable years, depreciation and operating expenses for two of its automobiles, which previously had been used by its said former officers for corporate purposes and thereafter were made available to the widows of such officers for their sole personal use. IV. Whether, for the taxable year ended in 1960, petitioner may deduct its adjusted cost basis (book value) for one of the said automobiles, after petitioner transferred the title thereof to the widow of the abovementioned Richard H. Way. All other issues raised in the pleadings have been disposed of by the parties through stipulations which will be given effect in the computations to be made under Rule 50. The several issues for decision will be considered, consecutively. All stipulations of facts and all stipulated exhibits are incorporated herein by reference. Issue I - Findings of Facts Re General Facts The petitioner, Way Baking Company is a Michigan corporation that was organized in 1927, and which has its principal place of business in Jackson, Michigan. At all times since incorporation it has engaged in the production and wholesaling of bakery products, including bread, rolls, cakes and pastries. *261 Its Federal income tax return for each of the taxable years was prepared on an accrual basis, and was filed with the district director of internal revenue at Detroit. In the year 1904, Harry E. Way and his wife Martha (each of whom was not more than 25 years of age) took over the operation of a small bakery business in Jackson, which Harry's father had founded and operated for several years as the sole proprietor. The business was at that time carried on in the kitchen and lean-to addition of a house that had been the Way family home; and it was this house which Harry and Martha thereupon took-over, both for their home and as the principal place of business for their bakery. For several years thereafter, the success of the business depended almost entirely on the personal efforts and services of Harry and Martha. At about 4 a. m. each day the two of them would commence the preparation, baking and wrapping of their products, so as to assure delivery thereof to the retail establishments of their customers at the opening of business. Martha personally made the deliveries in the family automobile. Harry handled the contacts with customers, and the overall management. Neither of them drew *262 any wage or salary as such. Gradually, the business grew significantly. In about 1910 a new bakery building was erected. In 1927 the business was incorporated by Harry and his two sons, John and Richard - originally under the corporate name of H.E. Way & Sons, Inc., which later was changed to the present name of Way Baking Company. More distant sales areas were then developed, and additional customers were acquired. Soon, the plant was further enlarged and improved; and modern electrically driven machinery was installed, including automatic ovens. And to assure fast delivery of the products to the broadening market areas, a fleet of motor trucks was developed, which at the time of Harry's death in 1954 served 20 city and rural routes. By 1957, petitioner's 170 gross sales exceeded $1,000,000; and by 1959, they had increased to over $2,000,000. Upon the incorporation of the business in 1927, Harry became the president and general manager; and as such he continued to carry, as he previously had, the principal responsibility for the business operations. Also at this same time his son, John H. Way, became vice-president and sales manager; his other son, Richard H. Way, became secretary-treasurer; *263 and all three became the directors. The capital stock of the corporation, which was all of one class and consisted of 700 shares of the par value of $100 each, was held at the time of Harry's death in 1954, as follows: Harry E. Way
199 shares
Martha T. Way (wife)
1 share
John H. Way (son)
225 shares
Richard H. Way (son)
225 shares
Elizabeth W. Kendall (daughter) 50 shares
Total
700 shares
Both the type of petitioner's business and the market area in which it operated, were highly competitive; and in order for petitioner to maintain and advance its position in such circumstances, it had to use most of its earnings for the above-mentioned enlargement and modernization of its plant, and for meeting operating costs including its growing payroll. Therefore, petitioner never paid any dividend. In 1933 Harry, for the purpose of helping the corporation meet financial requirements, contributed to it certain life insurance policies which he personally owned - none of which policies were ever returned to him. Also, over the entire period from 1932 through 1940, Harry and the other officers substantially reduced their already modest salaries. Thus during said 9-year period, Harry's salary as president and *264 general manager, which shortly before had been fixed by the Board of Directors at $8,000 per annum, was paid in reduced amounts ranging from $4,680 to $5,910 per year; the $5,000 previously authorized salary of John Way as vice-president and sales manager, was paid in reduced amounts of from $2,340 to $4,530 per year; and similarly, the $5,000 authorized salary of Richard Way as secretary-treasurer, was paid in reduced amounts ranging from $1,709 to $4,211 per year. No reimbursement for any of these salary reductions was ever made; but beginning in 1942, the salaries were restored to their pre-1932 levels. The highest amount of annual compensation which Harry ever received from petitioner was $15,392.21 for the year 1954, the year of his death. Facts re Payments to or for Harry's Widow Harry E. Way died on December 26, 1954, survived by his wife Martha who was then 71 years of age. By that time, Harry had been engaged in the business of the Way Baking Company (both before and after incorporation) for half a century; and he had continuously served as the chief executive officer of the petitioner for 27 years. The value of his gross estate, including insurance, was $112,181; and of *265 this Martha received assets valued at approximately $33,000, including life insurance, miscellaneous personalty, and the decedent's interest in jointly-owned property consisting of the family residence and certain savings bonds which went to her outright as the surviving joint tenant. As regards Harry's 199 shares of stock in the petitioner corporation, 17 shares were sold by the executor of his estate to pay administration expenses, and the balance of 182 shares passed to a testamentary trust in which Martha was given a life interest. But since the petitioner never paid any dividend, Martha's life interest in said testamentary trust yielded her no benefit. The petitioner at the time of Harry's death, did not have any formal plan for pensions, annuities, profit-sharing or deferred compensation for the benefit of salaried employees or their survivors. It did, however, provide pensions for its unionized employees, under arrangements made with their union; and for many years it had been the policy of the company to give needed assistance to employees or their families, based on loyalty, performance, and length of service. Also, prior to Harry's death petitioner had taken out insurance *266 on the lives of its officers, so that in the event of death the proceeds would be available to the corporation, either for payment of death benefits or for procurement of personnel replacement. The amount which petitioner received upon Harry's death, as beneficiary of the insurance policies held on his life, was $30,178.29. On January 3, 1955 (about a week after Harry's death) the surviving members of petitioner's Board of Directors held a special meeting at which: Harry's daughter, Elizabeth was elected to fill the vacancy on the Board; John and Richard Way were elected 171 president and vice-president, respectively; and an individual named Loyal J. Moore was elected secretary-treasurer. Furthermore, as was stated in the minutes of this meeting - It was also agreed by the Directors that Mrs. H. E. Way [Martha] be given $5000 by the Company provided that it can be given as a tax deductible item and if considered feasible by the management at a somewhat later date. The management is authorized to pay the sum later after conferring with the auditors. It was intended that this would provide an initial death benefit, at least until other plans were worked out. Subsequently during this *267 same year, a revised plan for making payments to or for the benefit of Martha was made effective with the consent of all the directors, but without formal action on their part. The character and amounts of the payments under this revised plan, which petitioner thereafter made to or for Martha, were as follows: Year 1955 - During the remainder of said year petitioner paid Martha amounts averaging approximately $60 per week - being a total for that year of $2,940. Year 1956 - During this year petitioner continued to make cash payments to Martha of about $60 per week (totaling $3,120 for 1956); and in addition, it reimbursed the Estate of Harry E. Way for withdrawals of $1,173.73 which Martha had made therefrom. Thus the aggregate of petitioner's payments for this year was $4,293.73. Years 1957 and 1958; and fiscal periods ended in 1959, 1960 and 1961 - In each of these periods, petitioner continued to make cash payments directly to Martha of $60 per week more or less (aggregating per period: $3,120, $3,060, $2,400, $3,240 and $3,120, respectively). In addition, petitioner applied for Martha's benefit in each period, such amounts as were required for the utilities, telephone, insurance, *268 repairs and real estate tax in respect of the residence she continued to occupy. And also for the last three of said periods, it applied sufficient funds to discharge her Federal income taxes in the amounts of $787.26, $1,33285 and $615.00, respectively - which resulted almost entirely from her inclusion of the various payments from the petitioner, in her taxable income. The principal reasons for the above method under which the payments were made to or for Martha as needed, rather than in a lump sum, were: That this procedure not only was helpful to the corporation which was employing most of its available funds for plant expansion and modernization; but also that it was helpful to Martha who, with advancing age and declining health, was experiencing some difficulty in personally attending to her accounts and house bills. The total amounts of the cash payments which petitioner made to or applied for the benefit of Martha during each of the four taxable years here involved, were: $4,352.75, $4,542.92, $6,172.00 and $5,179.00, respectively; and the aggregate amount of these payments plus all similar payments made or applied in preceding years following the death of Harry E. Way, was *269 $31,621.04. By way of comparison, this latter aggregate amount is approximately two times the compensation of $15,392.21, which petitioner paid for the services rendered by Harry E. Way in the year of his death; and it is approximately $1,400 more than the insurance proceeds of $30,178.29, which petitioner received from the above-mentioned policies that it carried on the life of said decedent. On March 9, 1962, (which was about 5 1/2 months after the last taxable year here involved) petitioner, acting pursuant to direction of its Board of Directors, ceased making cash payments to or for the benefit of Martha. The amounts of payments made or applied during this final 5 1/2 month period, totaled $2,235 (none of which is involved in this or any other proceeding). Martha died in February 1963, at about 80 years of age. The manner in which the above-mentioned cash payments were treated for income tax purposes - by Martha, by the petitioner, and by the respondent - was as follows: (1) Martha, in her several income tax returns, reported all amounts which petitioner paid or applied for her benefit, as being taxable income to her for the years in which the respective payments were received *270 or applied. And she paid all income taxes applicable thereto. (2) Petitioner, in its corporate income tax returns, deducted said payments in and for the respective taxable years in which the same were paid to or applied for Martha. (3) The respondent examined all said returns of petitioner and of Martha, and then: (a) In his notice of deficiency herein, he disallowed all the deductions which petitioner had claimed in respect of said payments; and (b), in separate communications to Martha, he denied all claims for refund which she had filed with a view to recovering the taxes paid because of her inclusion of the payments in her taxable income. 172 Ultimate Facts 1. The primary intention and dominant motive of petitioner's officers and directors, in authorizing and effecting the above-mentioned payments which petitioner made to or for the benefit of the widow of Harry E. Way, were: That these payments would constitute death benefits in the nature of deferred compensation, which petitioner was morally obligated to pay by reason of the valued services which the decedent had rendered to the corporation as its chief executive officer throughout the 27-year period between its incorporation *271 and his death, and which petitioner also was morally obligated to pay because of the inadequacy of the compensation which had been paid to said decedent for these services. 2. The cash payments which petitioner made to or applied for the benefit of the widow of Harry E. Way during the taxable years involved, constituted ordinary and necessary expenses paid by petitioner in carrying on its business, including a reasonable allowance for deferred compensation for personal services actually rendered by Harry E. Way prior to his death. Issue I - Opinion This first issue involves the deductibility by petitioner of cash amounts which it paid to or applied for the benefit of the widow of Harry E. Way, its former president, during the taxable years involved. Petitioner's position is that these payments were intended to be, and were, death benefits of reasonable amount which it was morally obligated to pay in recognition of the valued services that the decedent had rendered to the corporation over a long period of years without adequate compensation therefor, and that these amounts are deductible under section 404(a)(5) and related provisions of the Internal Revenue Code of 1954. Respondent, *272 on the other hand, contends in substance that petitioner has failed to meet "all the criteria provided by section 404(a)"; and also that these payments constituted either gifts or dividends which are not deductible by the corporation. After considering and weighing all the evidence, and also after considering all statutory provisions and judicial authorities which we regard to be pertinent, it is our conclusion that the above-stated position of the petitioner should be approved for the following reasons: 1. The Pertinent Statutory Provisions. We are satisfied that the provisions of the Internal Revenue Code of 1954 which control the deductibility by petitioner of the cash payments involved in this issue, are: Section 404(a)(5) and (b); and also section 162(a)(1), which is involved indirectly because of the reference thereto in section 404(a). The material portions of these statutes are set forth in the margin. [1] *273 *274 The obvious purpose of Congress in enacting section 404 was, in our view, to allow deductions to employers for contributions or payments of reasonable amounts, which are made by them pursuant to certain plans (whether formal or informal or merely equivalent to either) that they have provided for the benefit of their employees or the survivors thereof. The basic idea of this section - which is to treat qualified 173 contributions and payments of such character as ordinary and necessary operating expenses of the particular business involved - was first introduced into our Federal revenue statutes as section 23(q) of the Revenue Act of 1928, wherein it was made applicable only to employers' contributions to employee pension trusts. But this basic idea of treating employers' contributions for certain employee benefits as part of the operating expenses *275 of the business, continued to be included in all subsequently enacted Revenue Acts to and including the 1939 Internal Revenue Code. And then in the Revenue Act of 1942, the Congress, through adoption of amendments made to section 23(p) of the 1939 Code, greatly expanded the types of plans in respect of which contributions made by employers for the benefit of employees or their survivors, were allowed deduction. The new statutory provisions, thus adopted, were substantially the same as those now included in section 404 of the 1954 Code, here being considered. 2. Applicability of Section 404(a)(5) and (b) to Payments for Benefit of Widows of Former Employees. Section 404(a)(5) of the 1954 Code provides in substance for the allowance of a deduction to an employer in the taxable year when paid, of contributions or payments made to or under an employeebenefit or deferred-payment plan which is other than one covered by paragraphs (1), (2), or (3) of section 404(a), if such contribution or such deferred compensation is nonforfeitable at the time it is paid. As regards the application of said statutory provision in the instant case, section 1.404(a)-12 of the income tax regulations, which *276 pertains specifically to the application of section 404(a)(5), states in pertinent part as follows: [If] amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 * * *, such amounts are deductible under section 404 (a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). * * * [Italics supplied.] Likewise, both this Court and other courts have recognized that death benefits of reasonable amount which are paid by a corporation to the surviving beneficiary of a former employee, are deductible under section 404(a)(5). See for example: J.C. Nordt Co., 46 T.C. 431 at 443; and Rubber Associates, Inc. v. Commissioner, (C.A. 6) 335 F. 2d 75, 81, reversing a Memorandum Opinion of this Court on other grounds. See also, Fifth Avenue Coach Lines, Inc., 31 T.C. 1080, affirmed and reversed on other issues in 281 F. 2d 556 (C.A. 2). Furthermore, subparagraph (b) of section 404 of the 1954 Code (which this Court considered in the Nordt case, supra) indicates an intention by Congress that the benefits of the deductions provided *277 in section 404(a) should be allowed to an employer who, although he does not have an employee-benefit plan as such, nevertheless does have "a method of employer contributions or compensation" which has "the effect" of such a plan. Thus, as is stated in section 1.404(b)-1 of the regulations pertaining to section 404(b) - [Where] a corporation pays pensions to a retired employee or employees or to their beneficiaries in such amounts as may be determined from time to time by the board of directors or responsible officers of the company, or where a corporation is under an obligation, whether funded or unfunded, to pay a pension or other deferred compensation to an employee or his beneficiaries, there is a method having the effect of a plan deferring the receipt of compensation for which deductions are governed by section 404(a). [Italics supplied.] 3. The Cash Payments of Petitioner to Harry E. Way's Widow are in Accord with the Intent and Provisions of the Above-mentioned Statutes and Regulations. We have hereinabove found as ultimate facts, after hearing all the witnesses and after considering and weighing all the evidence - That the cash payments which petitioner made to or for the *278 benefit of the widow of Harry E. Way, were intended by petitioner's directors and responsible officers to be death benefits for said widow; That the dominant motive for these death benefits was to fulfill a moral obligation of petitioner to provide deferred-compensation for said widow, in recognition of the valued personal service, corporate leadership and financial assistance, which Harry E. Way had rendered to petitioner over a long period of years, without adequate compensation therefor. That these death benefits, including the portions paid during the taxable years here involved, were reasonable in amount; were nonforfeitable by the widow at and after the time paid; and constituted ordinary and necessary business expenses of the petitioner for the respective years when paid. It is our opinion, and we here hold, that the foregoing are in accord with the intent and 174 provisions of the above-mentioned statutes and regulations. 4. Respondent's Alternative Contentions that the Payments Constituted either Gifts or Dividends, are Unsupportable and Unsound. The Supreme Court made it plain, in Commissioner v. Duberstein [60-2 USTC 9515], 363 U.S. 278, that although a voluntarily executed *279 transfer of property from one person to another, without any consideration therefor, may constitute a gift under commonlaw - it is not necessarily a gift for income tax purposes. The Court also said: [Importantly, ] if the payment proceeds primarily from "the constraining force of any moral or legal duty," * * * it is not a gift [for income tax purposes]. And conversely, "[where] the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." * * * [the] most critical consideration * * * is the transferor's "intention." In the light of these legal principles the Findings of Facts which we have hereinabove made preclude any classification of the presently considered death benefits as being non-deductible gifts. Furthermore, said Findings of Facts (including those which show that Harry Way's widow held only 1 of the 700 outstanding shares of petitioner's stock; that she did not influence or control the corporation's policies or actions; and that the corporation, for financial reasons, did not make any distribution to any of its stockholders during any of the taxable years here involved) likewise preclude classification of the death *280 benefit payments as being dividends. We decide this first issue in favor of the petitioner. Issue II - Findings of Facts and Opinion This second issue is similar to the preceding one, in that it involves the deductibility by petitioner of certain cash payments which it made to the widow of Richard H. Way, its former vice-president who died about 3 1/2 years after the death of the above-mentioned Harry E. Way. Since most of the facts, statutes, regulations and contentions of the parties applicable to this issue are the same as those considered above - we shall, in order to avoid repetition, incorporate herein by reference what has been said above, and also add the following: Richard H. Way, who was one of the sons of Harry and Martha Way, died on May 25, 1958, at the age of about 53 years. He, together with his father and his brother John H. Way, incorporated the petitioner in 1927; and during the 31 subsequent years which preceded his death, he served the corporation not only as a member of its board of directors but also either as secretary-treasurer, or as treasurer, or as vice-president and general manager - the latter being the position which he held at the time of his death. *281 He was survived by his wife, Rosaline Way, who was considerably younger than he. She never was a stockholder of petitioner. She elected to renounce the Will of Richard, with the result that she never acquired any interest in the testamentary trust which succeeded to Richard's shares of petitioner's stock. And relatively soon thereafter, she remarried. In the foregoing circumstances, the petitioner - following the method of paying death benefits which it had adopted after the death of Harry E. Way (i.e., of paying such benefits in a series of relatively small amounts) - paid death benefits to Rosaline, as the widow of Richard H. Way, in cash amounts as follows: $100 biweekly from June 3, 1958, through August 11, 1958; $200 on August 25, 1958; $700 on September 8, 1958; $100 on September 29, 1958; $200 biweekly from October 13, 1958, through December 22, 1958; and $200 biweekly from January 5, 1959, through May 25, 1959. These cash amounts totaled $3,000 for the year 1958, and $2,200 for the next taxable year - being an aggregate of $5,200. Here again, we are convinced and hold: That the intention of petitioner's directors and responsible officers in making the above payments, was to *282 provide death benefits to the widow of Richard H. Way, petitioner's former vice-president; that the dominant motive for paying these death benefits was to fulfill a moral obligation of petitioner to provide deferred compensation in recognition of the valued personal services which said decedent had rendered as an officer of the corporation, over a long period of years and for inadequate compensation. Also, we further find as ultimate facts, and here hold: That said death benefits were reasonable in amount; that they were nonforfeitable by the widow at and after the time paid; that they constituted ordinary and necessary business expenses of petitioner; and that the deductions which petitioner claimed for these death benefits are allowable under section 404(a)(5) and (b) of the 1954 Code, 175 for the respective years in which the payments were paid. We decide this second issue, also, in favor of the petitioner. Issues III and IV - Findings of Facts and Opinions These two issues pertain to deductions claimed by petitioner in respect of two of its automobiles, under the following circumstances. During each of the four taxable years here involved, petitioner provided to the widow of Harry *283 E. Way, a 1954 Chevrolet automobile owned by it, which her husband formerly used in the business of the corporation. It also paid the expenses of operating this car. And in its corporate income tax returns for said years, it claimed deductions in respect of this automobile, under the designations of "Depreciation" and "Other Deductions," in the respective amounts of $517.96, $380.27, $143.82, and $80.16. Similarly, during the first three taxable years here involved, petitioner provided to the widow of Richard H. Way, a 1956 Chevrolet automobile owned by it and formerly used by her husband. Here again, it paid the expenses pertaining to this car; and in its income tax returns for said years, it made claim to deductions respecting this automobile, under the designations of "Depreciation" and "Other Deductions," in the amounts of $716.17, $701.47, and $299.69, respectively. Respondent, in his notice of deficiency herein, disallowed all these claimed deductions. It is these facts and these disallowances which have given rise to Issue III. As regards Issue IV, petitioner, during its taxable year ended on September 24, 1960, transferred to the widow of Richard H. Way the title to the 1956 *284 Chevrolet automobile previously mentioned. In its income tax return for that year, petitioner deducted as part of its "Other Deductions" the amount of $1,327, which was its book value (apparently its adjusted basis per books) for said automobile. Respondent, in his notice of deficiency, disallowed this claimed deduction. We feel impelled to decide each of these two last-mentioned issues in favor of the respondent. As regards Issue III, it seems clear to us that during the periods when the automobiles were being used by the widows (neither of whom was an employee) for their sole personal use - the cars could not qualify as "property used in the trade or business" or as "property held for the production of income" - which are the statutory tests for the allowance of depreciation under section 167(a)(1) and (2) of the 1954 Code. Nor, in our opinion, do the costs of operating the cars during said periods, qualify as "ordinary and necessary expenses incurred * * * in carrying on any trade or business," within the meaning of section 162 (pertaining to deductions for trade or business expenses). Also, the record is silent regarding the value of the use (rental value) of either car for any *285 period; and it is silent also, as to how the amounts claimed as "expenses" and "depreciation" were determined or computed. Finally, as regards Issue IV, the record does not establish the fair market value of the automobile transferred to the widow of Richard H. Way - which may be substantially different from petitioner's adjusted "book value" therefor. Furthermore, we believe that the value of the car at the time of its transfer (whatever that value may have been) does not qualify for deduction as the payment of death benefits in the nature of deferred compensation, within the meaning of section 404(a)(5) and (b) of the 1954 Code. We decide both Issue III and Issue IV in favor of the respondent. Decision will be entered under Rule 50. Footnotes
*. In 1959 the taxable year of the petitioner was changed, with permission of the Commissioner, from one ended on the last Saturday in December to one ended on the last Saturday in September. This created a short period from December 29, 1958, to September 26, 1959, in respect to which the income was annualized by the Commissioner in his computation of the deficiency for that period.↩
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER * * * [to Employee Benefit and Deferred-Payment Plans.] (a) GENERAL RULE. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 * * *; but, if they satisfy the conditions of * * * [said section], they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: (1) Pension trust. [not here applicable] (2) Employees' annuities. [not here applicable] (3) Stock bonus and profit-sharing trusts. [not here applicable] (4) Trusts created or organized outside the United States. [not here applicable] (5) Other plans. - In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid. * * * (b) Method of Contributions, Etc., Having the Effect of a Plan. - If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation, subsection (a) shall apply as if there were such a plan.↩