Andrews Distributing Co., Inc. v. Commissioner.
Andrews Distributing Co. v. Commissioner
Docket No. 4831-70.
United States Tax Court
T.C. Memo 1972-146; 1972 Tax Ct. Memo LEXIS 113; 31 T.C.M. (CCH) 732; T.C.M. (RIA) 72146; July 3, 1972
James W. Allen and Herman D. Bradley, 333 Union, Nashville, Tenn., for the petitioner. John B. Harper, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in the income tax of petitioner Andrews Distributing Co., Inc. as follows: Taxable Year Ended
Deficiency
10-31-66
$2,171.91
10-31-67
4,177.64 Due to a concession by petitioner at trial as to "automobile expenses" claimed in the amounts of $1,880.95 and $1,072.92, the total amount of the deficiencies still in dispute is somewhat smaller. Three issues are presented: (1) Whether contracted for payments made to the widow of petitioner's former board chairman and controlling shareholder are deductible under section 404(a)(5), I.R.C. 1954; [1]
(2) Whether payments in the 2 taxable years of $900 and $989.98 to Mary C. Andrews, the aforesaid widow and a vice president of petitioner, and of $900 and $990 to Mary A. Andrews, wife of petitioner's president and also a vice president, are deductible as compensation
*115 (3) Whether petitioner may deduct as a business expense the amounts of $843.39 for the taxable year ending in 1966 and $650.50 for that ending in 1967 pertaining specifically to the engagement of certain country club facilities for the entertainment of customers of petitioner. Findings of Fact Some of the facts are stipulated and are incorporated with the joint exhibits by reference. Petitioner is a corporation organized under the laws of the state of Tennessee and having its principal place of business in Nashville. It filed corporation income tax returns for the taxable years in issue with the district director of internal revenue at Nashville. 733 Petitioner's business is the wholesale distributing of Carrier air conditioning and heating equipment and related products. Joseph R. Andrews and his son, John N. Andrews, incorporated the business on June 21, 1957 and thereafter held all the outstanding common stock between themselves in the proportions of 56 2/3 percent (425 shares) and 43 1/3 percent (325 shares) respectively. Joseph R. Andrews died on May 3, 1967 at the *116 age of 68 and part of his equity was retired by petitioner to pay his estate taxes; the remaining stock was distributed in part (39 shares) to his widow, Mary C. Andrews, and in part (254 shares) to a trust of which she is the income beneficiary. During the taxable years in question John N. Andrews was president of the corporation, and his wife, Mary A. Andrews, and his mother, Mary C. Andrews, were vice presidents. Four other officers were individuals who were apparently unrelated to the Andrews family. Joseph R. Andrews was the chairman of the board of the 3-member board of directors of petitioner, and he held this position from the incorporation through his death; Mary C. Andrews succeeded him and held the position through the end of the 1967 fiscal year. John N. Andrews was a member as well as one O. B. Hofstetter, Jr., an attorney. As its name suggests, petitioner is the fruit of the efforts of the Andrews family, particularly those of Joseph R. Andrews. He had acquired a familiarity with wholesale appliance distributing as a salesman in the employ of the Radio & Appliance Corp. of Nashville. He quit that job to start his own business, incorporating petitioner in 1957. His *117 compensation in his last year with Radio & Appliance was a flat $22,000 plus 1 percent of sales which, on a volume of around $2 million that year, equalled $20,000. Predictably Joseph R. Andrews' compensation did not reach the $42,000 level in the early years of the new enterprise. Petitioner was launched on no more than $75,000 stated capital, which was inadequate to finance inventories and receivables during the peak installation seasons. Joseph Andrews secured a franchise with the Carrier Corp. in his own name and petitioner operated under Carrier's "Douglas Guardian Warehouse Plan," whereby Carrier consigned its air conditioning equipment to petitioner for a percentage fee. This arrangement with Carrier compensated for the shortage of working capital. In later years petitioner partially ended its dependency on Carrier's financing arrangement by obtaining a substantial line of credit from a local commercial bank. However, this did not occur until 1966. In 1958 Joseph Andrews was paid total compensation of $12,150 by petitioner; in 1959 he received $18,250, and $14,500 in 1960. By 1961 it appears that the board of directors had adopted a bonus formula for officers' compensation *118 proportioned to the annual profits of the business. Thereafter Joseph Andrews' salary was stabilized in the $18,000-$20,000 range while increasing bonuses in the succeeding years substantially augmented it. In 1965 for the first time his total compensation exceeded the previous high water mark set during his final year with Radio & Appliance Corp.
Except for its first year, petitioner has always been profitable. Gross sales advanced from $760,168 in 1958 to $3,479,312 in 1967, and earnings and profits had accumulated by 1967 in the amount of $304,649. (Petitioner has never declared a dividend.) On May 2, 1961 Joseph Andrews convened a special meeting of the board of directors of Nadrews Distributing Co. At the meeting the board voted to authorize the purchase of a key man life insurance policy on the life of John N. Andrews in the amount of $50,000 and to authorize an agreement with John Andrews for the establishment of a second life policy on the "split-dollar" life insurance plan. The board further resolved to authorize a contract between petitioner and Joseph Andrews providing for the payment of an annuity of $10,000 for 10 years to the chairman commencing upon his reaching *119 age 70 and retiring or upon his earlier disability or death. Upon the death of Joseph Andrews before his retirement or before the end of 10 years from the commencement of the payments his surviving widow was to receive the unmatured installments, but only so long as she lived. A formal contract embodying these terms was concluded in June 1961. The contract recited that: WHEREAS, EMPLOYEE [Joseph Andrews] has served the COMPANY [petitioner] ably and efficiently as president since its organization with resulting profits to COMPANY; and, WHEREAS, the Board of Directors of the COMPANY recognizes its accomplishments and progress resulting from the able direction and services of 734EMPLOYEE and is anxious to insure the continued improvement and stability of the COMPANY'S operations and finances under the direction and guidance of EMPLOYEE; and, WHEREAS, the COMPANY desires to retain the services of EMPLOYEE and realizes that if he were to enter into competition with the COMPANY, it would suffer a financial loss; and, WHEREAS, EMPLOYEE is willing to remain in the employment of the COMPANY if it will agree to pay to him or his wife, Mary C. Andrews, or both, certain annual *120 amounts, all in accordance with the provisions and conditions hereinafter set forth; NOW, THEREFORE, in consideration of the premises, and of the covenants and agreements herein contained, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto covenant and agree as follows: * * * Another part of the stated consideration flowing from Joseph Andrews was his promise to attend meetings of the board and to consult with the petitioner after his retirement and his covenant not to compete with petitioner in the state of Tennessee during the annuity period. The contract rights of Andrews and his wife were expressly made nonassignable. Since Joseph Andrews died before reaching the contractual retirement age, the annuity payments were made to Mary C. Andrews from the beginning. Petitioner claimed a deduction of $5,000 for payments made to her during 1967, and the Commissioner disallowed it. Also she received a $5,000 death benefit the treatment of which is not a matter in controversy. In addition to the measures already described that petitioner took to protect itself from the loss of key management personnel, petitioner established *121 a profit-sharing plan for all its employees in 1963 and made annual contributions to it thereafter. Petitioner also has hospitalization and salary continuation plans and group life insurance for its employees. In 1966 and 1967 petitioner paid Mary C. and Mary A. Andrews salaries of approximately $1,000 each in connection with vacation trips to Jamaica and Acapulco given to retailer customers of petitioner. The Carrier Corp. Encouraged petitioner to offer these trips, and it appears that petitioner's competitors also engaged in the same promotional practices. Petitioner awarded the trips as prizes in contests in which its dealer-customers were invited to participate; the trips were to destinations in all parts of the globe and were usually one week in duration. Since the trips were awarded both to husbands and wives, petitioner found it helpful to send the two Mrs. Andrews on the trips to act as hostesses, especially for the benefit of the women guests. Petitioner deducted the amounts paid to the 2 officers as salary expenses incurred in engaging their personal efforts on the trips. Petitioner on occasion used a country club in Nashville for entertaining its customers, and it deducted *122 from its income tax in 1966 and 1967 amounts apparently attributable to club dues and direct expenditures for guests. Opinion (1) The amounts paid under the petitioner's unfunded deferred compensation contract with Joseph Andrews are deductible by petitioner if at all only under paragraph (5) of section 404(a).[2] However that section explicitly incorporates the "ordinary and necessary" standard of 735 section 162 governing the deductibility of compensation generally. The reasonableness standard as it applies to deferred compensation has been held to call for scrutiny of a multiplicity of factors not all capable of precise measurement, such as the employee's qualifications, the nature of his work, the size of the business, the comparison of salaries paid with the corporate gross income, the comparison of salaries with distributions to stockholders, the treatment of other and not necessarily key employees as to salary and other forms of compensation, and in the case of small corporations such as petitioner the amount of compensation paid to the employee in previous years. Mayson Mfg. Co. v. Commissioner, 178 F. 2d 115 *123 (C.A. 6, 1949). The last mentioned factor is emphasized in section 1.404(a)-1(b), Income Tax Regs., which specifically provides that the amount deductible may not exceed the amount which "constitutes a reasonable allowance for compensation for the services actually rendered" in prior years and the year the compensation is paid. More directly on point is section 1.404(a)-12, Income Tax Regs., which deals specifically with section 404(a)(5). [3]
*124 The issue is ultimately a factual one, and it has been held that our determination "must be sustained on appeal unless it appears wholly unwarranted." Schner-Block Co. v. Commissioner, 329 F. 2d 875, 877 (C.A. 2, 1964), affirming T.C. Memo. 1963-166. See also Rubber Associates, Inc. v. Commissioner, 335 F. 2d 75, 80-81 (C.A. 6, 1964), reversing T.C. Memo. 1963-121. While petitioner did not develop as extensive a record as it might have, we feel that it has carried its burden of proving the reasonableness of the contract compensation. Joseph Andrews received amounts during each of the first 6-8 years of his new business that were smaller than his earnings in the last year he worked as a salaried employee. There is no evidence as to whether his income in that last year was unusually large (or small) in comparison to other years during which he worked for businesses other than his own, but it is reasonable to assume that his services were worth at least that much in subsequent years. The fact that his total compensation after 1964 exceeded the previous high, and the fact that the profits of petitioner increased consistently since *125 its incorporation are two clear indications of Joseph Andrews' business acumen. The total deferred compensation of $100,000 which was to be paid out in equal monthly installments over 10 years during a period that was not expected to and which in fact did not begin until several years after the date of the contract does not seem to us unreasonable in view of Joseph Andrews' inadequately rewarded sacrifices during petitioner's earlier years. [4]
The Commissioner contends not only that the payments to Mary C. Andrews did not represent reasonable compensation for Joseph Andrews' past service but also that the payments constituted a dividend to her. In support of the latter contention he draws our attention to the fact that petitioner did not declare a dividend during any of the years beginning with its incorporation and up through *126 the taxable years in issue, and 736 he cites to us Barbourville Brick Co., 37 T.C. 7 (1961) and similar decisions that have held amounts paid under nonqualified deferred compensation contracts to constitute dividends to the shareholder recipients. In Barbourville and also in union Stock Farms v. Commissioner, 265 F. 2d 712 (C.A. 9, 1959), affirming on the point T.C. Memo. 1955-308, the recipients of the payments, the widows of deceased employees, were controlling shareholders themselves; that they had used their voting control to divert previously undistributed earnings under the guise of compensation for past services was considered a more realistic appraisal of the substance of the distributions involved. Rubber Associates, Inc. v. Commissioner, supra at 78. By contrast, Mary C. Andrews did not receive a majority interest in the business from her husband after his death, and her outright ownership of 39 shares of petitioner certainly could not have given her the power to divert corporate profits. The Commissioner emphasizes the fact of Joseph Andrews' lifetime position as chairman of the board and controlling shareholder *127 as inconsistent with a finding that the deferred compensation contract was negotiated at arm's length. The conclusion the Commissioner draws from it that the contract was a lopsided benefit to Joseph Andrews that was not balanced by comparable treatment of other employees we think is unsupported by the record. Petitioner had the usual programs for fostering employee morale and loyalty and it took substantial measures to protect itself from the loss of the services of John N. Andrews. The perquisites of Joseph Andrews may have been more extensive and valuable than those enjoyed by any other employee, but they were not unreasonable in view of the value to the company of his efforts. Petitioner is entitled to deduct the amount of $5,000 paid to Mary C. Andrews in 1967 under the contract. (2) Petitioner claims that the amounts paid by petitioner to its vice presidents Mary C. and Mary A. Andrews in connection with the vacation trips constituted a salary expense; thus petitioner does not have to satisfy the detailed formal substantiation requirements that would apply if the amounts were claimed as entertainment expenses. We were presented with uncontradicted testimony that personal *128 services were performed on the week-long trips in the interest of building customer goodwill. Mary C. and Mary A. Andrews were well qualified to undertake the responsibilities of hostesses on these trips, due to their familiarity with the family business. The amounts paid are not unreasonable. Carrier Corp. urged petitioner to offer these trips, indeed it was the custom of the trade to do so, and consequently it cannot be said that the trips had no business purpose. We hold that the deductions for the modest salaries paid to the 2 vice presidents in the taxable years before us are allowable. (3) We reach the opposite conclusion as to the entertainment expenses incurred at the Hillwood Country Club. For expenses relating to the use of an entertainment facility to be deductible as ordinary and necessary business expenses under section 162, petitioner must not only show the amount and the reasonableness of the expense but must meet the requirements of section 274. Since petitioner introduced no evidence in satisfaction of the latter requirements, no deduction is allowable. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. The pertinent parts of section 404 as applicable to the taxable years before us are as follow: SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. (a) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: (1) Pension trusts. - * * * * * * (2) Employees' annuities. - * * * * * * (3) Stock bonus and profit-sharing trusts. - * * * * * * (4) Trusts created or organized outside the United States. - * * * * * * (5) Other plans. - In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid. * * * (7) Limit of deduction. - * * * * * * (b) Method of Contributions, Etc., Having the Effect of a Plan. - If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation, subsection (a) shall apply as if there were such a plan. ↩
3. Section 1.404(a)-12, Income Tax Regs., provides in part: Contributions of an employer under a plan that does not meet the requirements of section 401(a); application of section 404(a)(5). Section 404(a)(5) covers all cases for which deductions are allowable under section 404(a) but not allowable under paragraph (1), (2), (3), (4) or (7) of such section. * * * If unfunded pensions are paid directly to former employees, their rights to such payments are nonforfeitable, and accordingly, such amounts are deductible under section 404(a)(5) when paid. Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). * * * [Emphasis supplied.] With regard to the italicized language, it has been held that a period of 12 years is reasonable. Rev. Rul. 54-625, 1954-2 C.B. 85↩. The contract at bar provided for payments over a period of 10 years.
4. For analogous cases upholding the deductibility of deferred compensation paid to the widow or other beneficiary of a deceased key employee, see Rubber Associates, Inc. v. Commissioner, supra; John C. Nordt Co., 46 T.C. 431 (1966); and Way Baking Co., T.C. Memo. 1968-37↩; John B. Canepa Co., T.C. m/emo. 1963-337.